

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-2005

# Herring v. USA

Precedential or Non-Precedential: Precedential

Docket No. 04-4270

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Herring v. USA" (2005). *2005 Decisions.* Paper 463.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/463

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4270

_____

PATRICIA J. HERRING, INDIVIDUALLY; JUDITH
PALYA LOETHER, INDIVIDUALLY AND AS A LIVING
HEIR OF ELIZABETH PALYA (DECEASED); WILLIAM
PALYA, INDIVIDUALLY AND AS A LIVING HEIR OF
ELIZABETH PALYA (DECEASED); ROBERT PALYA,
INDIVIDUALLY AND AS A LIVING HEIR OF
ELIZABETH PALYA (DECEASED); SUSAN BRAUNER,
INDIVIDUALLY AND AS A LIVING HEIR OF PHYLLIS
BRAUNER (DECEASED); CATHERINE BRAUNER,
INDIVIDUALLY AND AS A LIVING HEIR OF PHYLLIS
BRAUNER (DECEASED),
Appellants

v.

UNITED STATES OF AMERICA

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 03-CV-5500)
District Court Judge: Honorable Legrome D. Davis

_____

Argued: July 15, 2005

Before: ALITO, VAN ANTWERPEN and ALDISERT,
Circuit Judges

(Filed: September 22, 2005)

---

Wilson M. Brown, III (Argued)
Lori J. Rapuano
Angie Halim
Drinker Biddle & Reath, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103

    Attorneys for Appellants

Peter D. Keisler
    Assistant Attorney General
Patrick L. Meehan
    United States Attorney
Barbara L. Herwig
August E. Flentje (Argued)
    Attorneys
Appellate Staff, Civil Division
Department of Justice
950 Pennsylvania Avenue, NW, Room 7242
Washington, D.C. 20530-0001

    Attorneys for Appellee

---

OPINION OF THE COURT

---

ALDISERT, <u>Circuit Judge</u>.

In this case we decide whether the Government's assertion of military secrets privilege for an accident report discussing the October 6, 1948 crash of a B-29 bomber which killed three civilian engineers along with six military personnel, at Waycross, Georgia, was fraud upon the court.

I.

Actions for fraud upon the court are so rare that this Court has not previously had the occasion to articulate a legal definition of the concept. The concept of fraud upon the court challenges the very principle upon which our judicial system is based: the finality of a judgment. The presumption against the reopening of a case that has gone through the appellate process all the way to the United States Supreme Court and reached final judgment must be not just a high hurdle to climb but a steep cliff-face to scale.

In order to meet the necessarily demanding standard for proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which

is directed at the court itself; and (4) in fact deceives the court.[1]

---

[1]The United States Court of Appeals for the Sixth Circuit has set forth five elements of fraud upon the court which consist of conduct: "1. On the part of an officer of the court;  2. That is directed to the 'judicial machinery' itself;  3. That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth;  4. That is a positive averment or is concealment when one is under a duty to disclose; 5. That deceives the court." Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993).

Although other United States Courts of Appeals have not articulated express elements of fraud upon the court as the Sixth Circuit did, the doctrine has been characterized "as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir. 1976) (citations omitted); see also Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978) (holding "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court"). Additionally, fraud upon the court differs from fraud on an adverse party in that it "is limited to fraud which seriously affects the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1998).

Other United States Courts of Appeals expressly require that fraud upon the court must involve an officer of the court. See Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48

4

We further conclude that a determination of fraud on the court may be justified only by "the most egregious misconduct directed to the court itself," and that it "must be supported by clear, unequivocal and convincing evidence." In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir. 1976) (citations omitted). The claim of privilege by the United States Air Force in this case can reasonably be interpreted to include within its scope information about the workings of the B-29, and therefore does not meet the demanding standard for fraud upon the court.

## II.

Early in 2000, Judith Palya Loether learned through internet research that the government had declassified Air Force documents regarding military aircraft accidents. She ordered documents related to the crash of a B-29 bomber at Waycross, Georgia, on October 6, 1948. Her father, Albert Palya, along

---

(1st Cir. 1995); Demjanjuk, 10 F.3d at 348. The Ninth Circuit noted that "one species of fraud upon the court occurs when an 'officer of the court' perpetrates fraud affecting the ability of the court or jury to impartially judge a case." Pumphrey v. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir. 1995); see also Weese v. Schukman, 98 F.3d 542, 553 (10th Cir. 1996) (noting that "fraud on the court should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court") (citation omitted); Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc., 616 F.2d 833, 837 (11th Cir. 1980) (same).

5

with two other civilian engineers, had been killed in that crash. Her mother and the other two widows had sued the Government under the Tort Claims Act, but had not been able to gain access to the, now declassified, Air Force documents because of the Government's claim that the documents were protected by privilege. The case was heard by the Supreme Court in United States v. Reynolds, 345 U.S. 1 (1953), which explained the legal framework we must use in analyzing claims in which the Government asserts a privilege against revealing military secrets. Id. at 7-12. The Supreme Court reversed the decision of this Court and remanded the case to District Court for determination of whether the facts of that particular case, applied to the legal standard articulated, merited a determination that the privilege sought by the Government should be granted. Id. at 12. Before the District Court was able to consider the case on remand, the parties settled for 75% of the District Court's original verdict and the case was then dismissed with prejudice.

The Supreme Court explained the facts and procedural history leading up to its determination of the case as follows:

> These suits under the Tort Claims Act arise from the death of three civilians in the crash of a B-29 aircraft at Waycross, Georgia, on October 6, 1948. Because an important question of the Government's privilege to resist discovery is involved, we granted certiorari.

> The aircraft had taken flight for the purpose of testing secret electronic equipment, with four civilian observers aboard. While aloft, fire broke

6

out in one of the bomber's engines. Six of the nine crew members, and three of the four civilian observers were killed in the crash.

The widows of the three deceased civilian observers brought consolidated suits against the United States. In the pretrial stages the plaintiffs moved, under Rule 34 of the Federal Rules of Civil Procedure, for production of the Air Force's official accident investigation report and the statements of the three surviving crew members, taken in connection with the official investigation. The Government moved to quash the motion, claiming that these matters were privileged against disclosure pursuant to Air Force regulations promulgated under R.S. § 161. The District Judge sustained plaintiffs' motion, holding that good cause for production had been shown. The claim of privilege under R.S. § 161 was rejected on the premise that the Tort Claims Act, in making the Government liable "in the same manner" as a private individual had waived any privilege based upon executive control over governmental documents.

Shortly after this decision, the District Court received a letter from the Secretary of the Air Force, stating that "it has been determined that it would not be in the public interest to furnish this report. . . ." The court allowed a rehearing on its earlier order, and at the rehearing the Secretary of

the Air Force filed a formal "Claim of Privilege." This document repeated the prior claim based generally on R.S. § 161, and then stated that the Government further objected to production of the documents "for the reason that the aircraft in question, together with the personnel on board, were engaged in a highly secret mission of the Air Force." An affidavit of the Judge Advocate General, United States Air Force, was also filed with the court, which asserted that the demanded material could not be furnished "without seriously hampering national security, flying safety and the development of highly technical and secret military equipment." The same affidavit offered to produce the three surviving crew members, without cost, for examination by the plaintiffs. The witnesses would be allowed to refresh their memories from any statement made by them to the Air Force, and authorized to testify as to all matters except those of a "classified nature."

The District Court ordered the Government to produce the documents in order that the court might determine whether they contained privileged matter. The Government declined, so the court entered an order, under Rule 37(b)(2)(i), that the facts on the issue of negligence would be taken as established in plaintiffs' favor. After a hearing to determine damages, final judgment was entered for the plaintiffs. The Court of Appeals affirmed, both as to the showing of good cause for production of the documents, and as to the ultimate disposition of the case as a consequence of the Government's refusal to produce the

documents.

Id. at 2-5 (citations and internal quotations omitted).

In the present action, Palya Loether is joined by Patricia Herring, William Palya, Robert Palya, Susan Brauner and Catherine Brauner. Patricia Herring is one of the widows who was a party in the original action. The others are heirs of the two other, now deceased, widows in the original action. The substance of their complaint is that the purportedly top secret documents for which the Government claimed a military secrets privilege did not actually reveal anything of a sensitive nature. They claim, therefore, that Government officers fraudulently misrepresented the nature of the report in a way that caused the widows to settle their case for less than its full value.

Appellants first pursued this current claim in the Supreme Court by a motion seeking leave to file a petition for a writ of error coram nobis. The Court denied this motion on June 23, 2003. In re Herring, 539 U.S. 940 (2003). Then, on October 1, 2003, Appellants filed this action in the District Court for the Eastern District of Pennsylvania, preserved by the savings clause of Rule 60(b) of the Federal Rules of Civil Procedure, to set aside the 50-year-old settlement agreement on the grounds that the settlement was procured by fraud upon the court. The Appellants sought the difference between the settlement amount and judgment originally entered by the District Court (which was later set aside by the Supreme Court). The Government then filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). The District Court granted the Government's 12(b)(6) motion. It determined that there was no fraud because the

documents, read in their historical context, could have revealed secret information about the equipment being tested on the plane and, on a broader reading, the claim of privilege referred to both the mission and the workings of the B-29. We affirm.

## III.

The District Court had jurisdiction supplemental to its exercise of jurisdiction over the original claim in Reynolds v. United States, No. 10142 (E.D. Pa.) (filed September 27, 1949), and Brauner v. United States, No. 9793 (E.D. Pa.) (filed June 21, 1949). See 28 U.S.C. § 1367 (2000). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## IV.

The Government urges us to apply an abuse of discretion standard of review to our review of the District Court's grant of its Rule 12(b)(6) motion and provides several arguments in favor of departure from the normally applicable standard.

Initially, we must be clear that we are not here reviewing a Rule 60(b) motion. The provision of Rule 60(b) commonly known as the "savings clause" states: "**This rule does not limit the power of a court to entertain an independent action** to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court." Rule 60(b), Federal Rules of Civil Procedure (emphasis added). It follows that an independent action alleging fraud upon the court is completely distinct from a motion under

10

Rule 60(b). See Geo. P. Reintjes Co., 71 F.3d at 48.

The Government contends that because Appellants seek an equitable remedy ancillary to the prior suit of relief from a prior judgment of the District Court we should treat this action as if it were a review of denial of a Rule 60(b) motion and therefore review for abuse of discretion. We will not treat as a Rule 60(b) motion something that is explicitly preserved without being included by the text of Rule 60(b).

We are similarly unpersuaded by the Government's argument that because Rule 60(b) allows relief more broad than an independent action for fraud upon the court, and determinations based on Rule 60(b) are reviewed only for abuse of discretion, see Pridgen v. Shannon, 380 F.3d 721, 725 (3d Cir. 2004), an independent action for fraud upon the court should be reviewed at least as deferentially. Fundamentally, this argument confuses standard of review with burden of proof. We are quite capable of taking full account of the narrow criteria for relief present in an independent action for fraud upon the court without altering the Federal Rules of Civil Procedure. Under the normal de novo review that applies to a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, we can determine whether the Appellants have alleged facts which, if true, provide a basis for relief under the very demanding legal standard for fraud upon the court.

Finally, the Government cites United States v. Buck, 281 F.3d 1336, 1342-1343 (10th Cir. 2002), for the proposition that independent actions to reopen a judgment based on fraud upon the court are reviewed for abuse of discretion. We note initially

that <u>Buck</u> is not binding on this Court. Even if it were, it does not support the Government's proposition because it reviewed a case in a much different procedural posture than the one at bar. In <u>Buck</u>, the court converted a motion brought under Rule 60(b)(6) alleging fraud upon the court into an independent action and then reviewed for abuse of discretion. Instead, we are faced with the simple review of a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim to which <u>de novo</u> review clearly applies. <u>See</u> <u>In re Adams Golf, Inc. Sec. Litig.</u>, 381 F.3d 267, 273 (3d Cir. 2004).

V.

As noted above, we will employ a demanding standard for independent actions alleging fraud upon the court requiring: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court. We agree with the Court of Appeals of the Eighth Circuit that the fraud on the court must constitute "egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel. " <u>In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions</u>, 538 F.2d at 195 (citations omitted). We must decide whether the United States Air Force's assertion of military secrets privilege over the accident report describing the cause of the B-29's crash at Waycross, Georgia, was fraud upon the court. In order to do this we look carefully at two documents central to the original litigation: the formal affidavit and claim of privilege filed by then-Secretary of the Air Force, Thomas K. Finletter and an affidavit of then-Judge Advocate General of the Air Force, Reginald Harmon.

12

Before engaging in a detailed inquiry into the substance contained in these documents it is important to note the form and authorship of the documents. Both are formal documents making assertions to the court under oath authored by lawyers who were participating in the litigation though not directly representing the United States.

Authorship is important because, as noted above, we agree with the courts analyzing fraud upon the court which have required the fraud to be perpetrated by an "officer of the court." See Geo. P. Reintjes, 71 F.3d at 49; Demjanjuk, 10 F.3d at 348; Lockwood v. Bowles, 46 F.R.D. 625, 632 (D.C. Cir. 1969). These cases have noted, and we agree, that perjury by a witness is not enough to constitute fraud upon the court. See e.g., Geo. P. Reintjes Co., 71 F.3d at 49 ("The possibility of perjury, even concerted, is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination, and, where warranted, motion for relief from judgment to the presiding court. Were mere perjury sufficient to override the considerable value of finality after the statutory time period for motions on account of fraud has expired, it would upend [Rule 60's] careful balance.") (citations omitted).

The Government seeks to define officer of the court narrowly to exclude Secretary Finletter and Judge Advocate Harmon because, though lawyers, they did not represent the United States in the litigation sought to be reopened. Although it is true that Finletter and Harmon did not represent the United States in the litigation, they did represent the United States Air Force's claim of privilege over a document central to that litigation. They were attorneys making a formal claim of privilege on behalf of the Government. We agree with the

13

District Court's conclusion that the Supreme Court depended upon Finletter and Harmon's "experience, expertise and truthfulness" in its decision to reverse and remand. Herring v. United States, No. Civ. A.03-CV-5500-LDD, 2004 WL 2040272, *6 n.3 (E.D. Pa. Sept. 10, 2004). Given these unique facts, we find it inappropriate to decide the case on the basis that Secretary Finletter and Judge Advocate General Harmon were not officers of the court.[2]

The stature of the documents in which the allegedly fraudulent representations were made is also important. The representations were made in an affidavit of Judge Advocate General Harmon and an affidavit and formal claim of privilege of Secretary Finletter both made under oath. To allege that false statements were made in these documents is to allege perjury; a particularly serious type of perjury because of the high degree of faith the Court placed in the truth of Finletter and Harmon's representations. In a perjury case, the plaintiff must prove that the allegedly perjurious statement is not subject to a literal, truthful interpretation. United States v. Tonelli, 577 F.2d 194, 198 (3d Cir. 1978). As explained above, proof of perjury is not enough to establish fraud upon the court. See e.g., Geo. P. Reintjes Co., 71 F.3d at 49. In this case, however, an accusation of perjury forms the basis of the fraud upon the court claim. In such a case, proof of perjury, though not sufficient to prove

---

[2] In this view that we take, we extend to Appellants the full reach of case law that prescribed required elements of "fraud upon the court." Were we to proceed otherwise, the following discussion would not have been necessary to affirm the judgment of the District Court.

14

fraud upon the court, becomes a necessary element which must be met before going on to meet the additional rigors of proving fraud upon the court.

Moving to our examination of the substance of the two documents relied on by the Appellants, it is apparent that we must determine whether they are susceptible to a truthful interpretation. More specifically, can they be reasonably read to include within their scope an assertion of privilege over the workings of the B-29? If they can, the Appellants' assertion that the Air Force claim of military secrets privilege misrepresented the nature of the information contained in the accident report over which the privilege was asserted falls apart.[3]

_____

[3]Even if we concluded that the Air Force's claim of privilege could not be read to include concern about revealing the workings of the B-29, we would be obligated to consider whether certain information contained in the accident report actually revealed sensitive information about the mission and the electronic equipment involved. The accident report revealed, for example, that the project was being carried out by "the 3150th Electronics Squadron," that the mission required an "aircraft capable of dropping bombs" and that the mission required an airplane capable of "operating at altitudes of 20,000 feet and above." (Report of Special Investigation of Aircraft Accident Involving TB-29-100BS No. 45-21866.)  Our conclusion that information about the workings of the B-29 was included within the claim of privilege makes it unnecessary to engage in this analysis. If such an analysis were necessary, it would require a certain amount of deference to the Government's position because of the near impossibility of determining with any level

15

We conclude that the statements of Finletter and Harmon can be reasonably read to assert privilege over technical information about the B-29. The formal claim of privilege made by Secretary Finletter states:

> The defendant further objects to the production of this report, together with the statements of witnesses, for the reason that the aircraft in question, together with the personnel on board, were engaged in a confidential mission of the Air Force. The airplane likewise carried confidential equipment on board and any disclosure of **its** mission or information concerning **its** operation or performance would be prejudicial to this department and would not be in the public interest.

---

of certainty what seemingly insignificant pieces of information would have been of keen interest to a Soviet spy fifty years ago. See e.g., Knight v. C.I.A., 872 F.2d 660, 663 (5th Cir. 1989) ("[E]ven the most apparently innocuous [information] can yield valuable intelligence."); C.I.A. v. Sims, 471 U.S. 159, 178 (1985) ("Foreign intelligence services have both the capacity to gather and analyze any information that is in the public domain and the substantial expertise in deducing the identities of intelligence sources from seemingly unimportant details. In this context, the very nature of the intelligence apparatus of any country is to try to find out the concerns of others; bits and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" (citation omitted).

(Claim of Privilege by the Secretary of the Air Force (emphasis added).)

Appellants and the Government disagree on whether the pronoun "its" refers only to the electronic equipment on board or the B-29 airplane itself. While both readings are conceivable, the Government's is more logical. It is more natural to refer to an airplane's mission than to refer to the confidential equipment's mission. At the very least, the statement is readily susceptible to the reading preferred by the Government.

Appellants' contention about the meaning of "its" in the claim of privilege is also completely undercut by the statement in their original Supreme Court brief that "the Secretary for Air [sic] in his claim of privilege states (R. 22) that 'any disclosure of **its (the airplane's)** mission or information concerning its operation or performance would be prejudicial'" and that it was "obvious that the Air Force considers that all details concerning the operation of the airplane are 'classified.'" (Brief for Respondents submitted to the Supreme Court at 35 n.4 (emphasis added) (parenthetical alteration in the original).)

Nothing in Judge Advocate General Harmon's affidavit contradicts the Government's contention that the claim of privilege referred to the B-29 itself rather than solely the secret mission and equipment.

\* \* \* \* \*

Because there is an obviously reasonable truthful interpretation of the statements made by the Air Force, Appellants are unable to make out a claim for the perjury which, as explained above, forms the basis for their fraud upon the court claim. We, therefore, conclude that Appellants failed to

17

state a claim upon which relief can be granted.

We will affirm the judgment of the District Court.