ENTERED DEC 0 5 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. PORSC-CV-13-73
JAW-CUM-12-03-14

STACY MAHONEY,

Plaintiff,

v.

YORK HOSPITAL,

Defendant.

ORDER ON MOTION
TO DISMISS

STATE OF MAINE
Cumberland, ss, Clerk's Office

DEC 03 2014

RECEIVED

Defendant York Hospital has filed a motion to dismiss plaintiff's complaint for fraud on the court. York Hospital alleges that Mahoney participated in intimidating a likely witness at trial and then lied about the incident in her deposition. The motion alleges that Mahoney conspired with her friend Karyn Fisette to place a note on Jessica DeLeon's car. Jessica DeLeon is a likely witness for the defendant in this case. The note read: "How did it feel – not to get that InterMed job. See what evil gets you??"

It is clear from evidence filed by York Hospital that Fisette placed the note on DeLeon's windshield. It is not clear that Mahoney conspired with her to place the note or knew what the note said. On the advice of her attorney, Fisette invoked her privilege against self-incrimination at her deposition and refused to answer questions about the note. York Hospital argues that Mahoney lied at her deposition when she claimed she had no knowledge of the note. York Hospital obtained text messages between Mahoney and Fisette that show Fisette told Mahoney that she placed the note, but the text messages do not show that Fisette

disclosed the contents of the note to Mahoney before she placed the note on DeLeon's vehicle. York Hospital asks the court to infer that Mahoney had knowledge of and participated in placing the note on DeLeon's windshield.

Fraud on the court is generally limited to situations involving an "officer of the court." *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005). Even if York Hospital had proven Mahoney perjured herself, "perjury by a witness is not enough to constitute a fraud upon the court." *Id.* York Hospital's allegations that Mahoney conspired to intimidate a witness have not been clearly proven, and the court declines to make factual inferences in defendant's favor. To the extent the note incident bears on Mahoney's credibility as a witness, defense counsel will be able to cross-examine her about the placement of the note and her deposition testimony at trial. If pertinent, defendant may renew its motion for judgment as a matter of law at the close of trial.

The entry is:

> York Hospital's motion to dismiss for fraud on the court is
> DENIED.

Dated: December 3, 2014

Joyce A. Wheeler
Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. PORSC-CV-13-73
JAW-CUM-12-03-14

STACY MAHONEY,

Plaintiff,

v.

YORK HOSPITAL,

Defendant.

ORDER ON MOTION FOR
SUMMARY JUDGMENT

STATE OF MAINE
Cumberland, ss, Clerk's Office

DEC 03 2014

RECEIVED

Before the Court is defendant York Hospital's motion for summary judgment. Plaintiff Stacy Mahoney's complaint alleges three counts: disability discrimination (count I), retaliation (count II), and constructive discharge (count III) For the following reasons, the motion is denied as to counts I and II and granted as to count III of the complaint.

## FACTS

The following facts are largely undisputed and presented in a light most favorable to plaintiff as the non-moving party. Where there are disputed facts, the court has so noted. Plaintiff Stacy Mahoney began working for defendant York Hospital as a surgical technician on March 7, 2011. (Pl.'s Add. S.M.F. ¶ 1.) Mahoney has an ear condition called otitis media, which causes pain and loss of hearing. (Pl.'s Add. S.M.F. ¶¶ 3, 6.) As a result, Mahoney has had multiple surgeries known as myringotomies, in which a tube is placed in her ear to drain excess fluid. (Pl.'s Add. S.M.F. ¶¶ 5, 8.) Mahoney has had other ear surgeries, including having both of her eardrums replaced. (Pl.'s Add. S.M.F. ¶¶ 8-9.) While working for York Hospital, Mahoney began wearing digital hearing aids.

(Pl.'s Add. S.M.F. ¶¶ 10-11.) Mahoney alleges that after she began wearing the hearing aids, hospital staff began treating her unfairly.

**Mahoney's Work Prior to Hearing Aids**

Initially, Mahoney did not receive direct training from any single individual. (Def.'s Supp. S.M.F. ¶ 10.) In June 2011, however, Mary Gregoire, another surgical tech, volunteered to be Mahoney's preceptor to help train her. (Def.'s Supp. S.M.F. ¶ 22.) Initially, Gregoire and Mahoney got along well and socialized outside of work two or three times per month. (Def.'s Supp. S.M.F. ¶ 23.) Gregoire actually spurred Mahoney to get hearing aids by commenting that Mahoney might not be able to hear on one side. (Pl.'s Add. S.M.F. ¶ 13; Def.'s Supp. S.M.F. ¶ 25.) While serving as her preceptor, Gregoire told Mahoney that she was doing a good job.[1] (Pl.'s Add. S.M.F. ¶ 16.)

In June 2011, Mahoney received a largely positive review of her job performance from her supervisor Dr. Jeffrey Lockhart. (Pl.'s Add. S.M.F. ¶ 33; Def.'s Supp. S.M.F. ¶ 15.) Mahoney received her hearing aids on August 17, 2011. (Def.'s Supp. S.M.F. ¶ 26.) On September 22, 2011, Mahoney received a birthday card from Dr. Lockhart in which he wrote, "Stacy, you are growing each day as a surgical tech. I can see an [increased] confidence level. We are behind you. Have a great B-day. JL." (Pl.'s Add. S.M.F. ¶ 17; Def.'s Supp. S.M.F. ¶ 32.) Aside from the letter and the card, Mahoney claims that she only received positive comments before York Hospital knew that she wore hearing aids. (Pl.'s Add. S.M.F. ¶ 28.)

---

[1] Defendant objects that the statement by Gregoire that Mahoney was doing a good job is hearsay, but the statement is not offered to prove that Mahoney was in fact doing a good job but only to show Gregoire's opinion. *See State v. Haque*, 1999 ME 30, ¶ 22, 726 A.2d 205 ("[A] statement that is not offered to prove the truth of the matter asserted is not hearsay.").

2

## Knowledge of the Hearing Aids

On September 28, 2011, Mahoney told Gregoire that she was wearing hearing aids. (Pl.'s Add. S.M.F. ¶ 18.) Every three to five days, Mahoney had to take out her hearing aids at work and replace the batteries. (Pl.'s Add. S.M.F. ¶¶ 24-25.) The hearing aids are visible while Mahoney is in surgery. (Pl.'s Add S.M.F. ¶ 26.) One of Mahoney's co-workers, Karyn Fisette, noticed the hearing aids because she could see the batteries and a small wire and could occasionally hear a ringing noise. (Pl.'s Add. S.M.F. ¶ 27.) Nurse Jessica DeLeon was also aware that Mahoney used hearing aids. (Pl.'s Reply S.M.F. ¶ 27.)

## After the Hearing Aids

According to Mahoney, beginning in October 2011, hospital staff began treating her poorly. (Pl.'s Add. S.M.F. ¶¶ 28-29.) Mahoney alleges that her unit coordinator was rude; other staff hit, screamed, and swore at her; and she was pulled out of cases, which Mahoney considered demeaning. (Pl.'s Add. S.M.F. ¶ 28.)[2]

At some point in the fall, Dr. Lockhart placed Mahoney on a 90-day improvement plan involving periodic evaluations by surgeons and other surgical techs.[3] (Pl.'s Add. S.M.F. ¶ 30.) Dr. Lockhart testified that to his knowledge, no other employee had been singled out for these evaluations in the past. (Pl.'s Add. S.M.F. ¶ 35.) Mahoney testified that DeLeon would review the evaluations from

---

[2] Other facts related by plaintiff cannot be considered because plaintiff fails to provide a record citation or cites to her own complaint. *See Deutsche Bank Nat'l Trust Co. v Raggiani*, 2009 ME 120, ¶ 6, 985 A.2d 1 ("A party's citation to its own complaint is insufficient to support a material fact.").
[3] The parties' statements of material fact do not state when Mahoney was placed on the improvement plan, but it occurred before December 13, 2011. (Def.'s Supp. S.M.F. ¶ 47.)

3

doctors and staff, and speak about the evaluations in public areas of the hospital. (Pl.'s Add. S.M.F. ¶ 40.)

Mahoney complained to DeLeon about discrimination. (Pl.'s Add. S.M.F. ¶¶ 48-51.) Mahoney asked DeLeon if she was being treated differently because of her hearing. (Pl.'s Add. S.M.F. ¶ 49.) According to Mahoney, DeLeon responded by saying that there had been complaints about Mahoney, but she did not identify who made the complaints or their substance. (Pl.'s Add. S.M.F. ¶ 51.)

On December 13, 2011, Mahoney met with Olivia Chayer, Director of Human Resources, and complained that she felt she was being discriminated against because she wore a hearing aid. (Pl.'s Add. S.M.F. ¶ 51.) Mahoney complained to Chayer that DeLeon spoke about her in a public area and that DeLeon fabricated a story about Mahoney criticizing two surgeons. (Add. S.M.F. ¶¶ 54-55.) Chayer investigated Mahoney's claims by interviewing Lockhart, DeLeon, and another nurse Elizabeth Soule. (Def.'s Supp. S.M.F. ¶ 50; Pl.'s Reply S.M.F. ¶ 51.) Chayer met with Mahoney on December 29, 2011 to discuss her findings. (Pl.'s Add. S.M.F. ¶ 62.) Chayer concluded that Mahoney's co-workers were not discriminating against her, but they were frustrated because of her lack of training. (Pl.'s Add. S.M.F. ¶ 64.)

**Mahoney's Allegations of Retaliation**

Mahoney did not make any other complaints between December 13, 2011 and March 19, 2012. (Def.'s Supp. S.M.F. ¶ 55.) On January 13, 2012, Mahoney received her 10-month evaluation from Dr. Lockhart, which states: "performance is satisfactory. Working independently on cases her preceptor feels she is comfortable with. Needs preceptor for resections. Still needs floor ortho training. Will take call after ortho training is completed. Co-workers have reported a

4

negative attitude at times." (Pl.'s Add. S.M.F. ¶ 65.) A month later, Chayer followed up with Lockhart about Mahoney's performance and Lockhart said she was doing fine and did not report any problems. (Pl.'s Add. S.M.F. ¶¶ 66-67.)

On March 19, 2012, Mahoney met with Lockhart and Chayer to complain that she was being retaliated against for her December 13, 2011 complaint of discrimination. (Pl.'s Add. S.M.F. ¶ 57.) Mahoney complained about three co-workers: Anna Kaluznynski, Mary Gregoire, and Marjorie Tricca. (Def.'s Supp. S.M.F. ¶ 58.) She alleged that Kaluznynski screamed a profanity at her, that Gregoire set her up to fail and called her an "asshole" and that Tricca hit her on her back. (Def.'s Supp. S.M.F. ¶ 59.) Mahoney testified that Tricca admonished her for complaining to Human Resources. (Def.'s Supp. S.M.F. ¶ 62.)

Chayer again investigated Mahoney's complaints. She interviewed DeLeon, Kaluznynski, Gregoire, Tricca, Cook, and Fisette. (Def.'s Supp. S.M.F. ¶ 65.) Chayer confirmed that Kaluznynski did yell a profanity and Tricca had been rude, loud, and disrespectful to Mahoney. (Def.'s Supp. S.M.F. ¶ 66.) Chayer concluded, however, that the behavior Mahoney was complaining about was not motivated by retaliation for her complaint about discrimination. (Def.'s Supp. S.M.F. ¶ 68.)

On March 22, 2012, Mahoney filed a complaint with the Maine Human Rights Commission (MHRC) alleging disability discrimination, which York Hospital received on March 30, 2012. (Pl.'s Add. S.M.F. ¶¶ 75-76.) She amended her complaint on April 3, 2012 to add a cause of action for retaliation. (Pl.'s Add.

5

S.M.F. ¶ 77.) After receiving the MHRC complaint, Lockhart began making handwritten desk notes about Mahoney.[*] (Pl.'s Add. S.M.F. ¶ 78.)

Mahoney testified that after she filed the MHRC complaint, Kaluznynski, Cook, and Tricca started treating her differently. (Pl.'s Add. S.M.F. ¶ 81.) On May 4, 2012, at Lockhart's request, Cook gave Mahoney an evaluation. (Def.'s Reply S.M.F. ¶ 82.) The evaluation was negative. (Pl.'s Add. S.M.F. ¶ 82.) Cook stopped acting as Mahoney's preceptor after the evaluation. (Pl.'s Add. S.M.F. ¶ 83.) On June 13, 2012, Lockhart, Cook, and Mahoney had a performance discussion about Cook's evaluation, which resulted in an oral warning based on job performance. (Pl.'s Add. S.M.F. ¶ 84.)

On August 10, 2012, Lockhart wrote Mahoney a formal warning, which stated: "Stacy's skill set has not progressed. If Stacy's work performance has not met my expectations by 9/14/12, Stacy's employment at York Hospital will be terminated." (Pl.'s Add. S.M.F. ¶ 87.) Lockhart admits that Mahoney had no specific performance issues between the verbal warning and the formal warning. (Pl.'s Add. S.M.F. ¶ 88.) York Hospital has a progressive discipline policy in which there are three warnings prior to termination. (Add. S.M.F. ¶ 88.) On September 4, 2012, Mahoney sent a resignation letter to Chayer. (Def.'s Supp. S.M.F. ¶ 94; Pl.'s Add. S.M.F. ¶ 89.)

## PROCEDURAL HISTORY

Plaintiff filed her complaint on February 19, 2013. The parties had a discovery dispute surrounding evidence related to a note placed on DeLeon's car windshield. In orders dated February 19 and April 9, 2014 the court resolved the

---

[*] Defendant denies that Lockhart started making the desk notes in response to the MHRC complaint. (Def.'s Reply S.M.F. ¶ 78.) This is an issue for the fact-finder.

6

discovery issues. Defendant filed a motion to dismiss for plaintiff committing fraud on the court on May 29, 2014 and a motion for summary judgment on the following day. The Court heard oral argument on both motions on August 21, 2014. The court addresses defendant's motion to dismiss in a separate order.

## DISCUSSION

### 1. Summary Judgment Standard

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Id.*

### 2. Disability Discrimination

The Maine Human Rights Act (MHRA) makes it unlawful for an employer to discriminate against an employee because of that employee's disability. 5 M.R.S. § 4572(2) (2013). Mahoney alleges that York Hospital unlawfully

7

discriminated against her because of her hearing disability after hospital staff discovered that she wore hearing aids.

The court applies a three-step, burden-shifting analysis to a defendant's motion for summary judgment on an employee's claim for employment discrimination. *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 14, 45 A.3d 722 This requires plaintiff to first demonstrate a prima facie case by showing:

(1) he has a disability;

(2) he is otherwise qualified with or without reasonable accommodations, to perform the essential functions of his job; and

(3) his employer adversely treated him based in whole or in part on his disability.

*Daniels*, 2012 ME 80, ¶ 14, 45 A.3d 722. If the plaintiff produces evidence of a prima face case, "the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory basis for its action." *Id.* ¶ 15. If the employer meets its burden at the second stage, "the employee can survive a motion for summary judgment by presenting sufficient evidence from which a fact-finder could determine 'that either (1) the circumstances underlying the employer's articulated reason are untrue, or (2) even if true, those circumstances were not the actual cause of the employment decision.'" *Id.* (quoting *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 2, 974 A.2d 276).

a. Prima Facie Case

It is undisputed that Mahoney has a hearing disability and Mahoney has produced evidence that she is qualified to perform the essential functions of the job. *See Daniels*, 2012 ME 80, ¶ 16, 45 A.3d 722 (holding that whether a plaintiff

8

can perform essential job functions is a question for the fact-finder). The issue is whether Mahoney was adversely treated "based in whole or in part" on her disability.⁵ *Id.* ¶ 14. Defendant argues that plaintiff cannot rely on temporal proximity alone to establish her case. *See Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc.,* 425 F.3d 67, 85 (1st Cir. 2005) ("Chronological proximity does not by itself establish causality, particularly if the larger picture undercuts any claim of causation." (quotation marks and brackets omitted)). For purposes of plaintiff's prima facie case, however, Maine case law is to the contrary.

In *Daniels,* the Law Court explicitly stated, "[t]emporal proximity of an employer's awareness of protected activity and the alleged retaliatory action may serve as the causal link for purposes of a prima facie case." *Daniels,* 2012 ME 80, ¶ 21, 45 A.3d 722. Although the Law Court made that statement in the context of a retaliation claim, the same reasoning applies to the discrimination claim itself. Defendant argues that the tripartite burden-shifting analysis conceals plaintiff's ultimate burden to demonstrate a causal link, (*see* Def.'s Reply Mem. at 2), but the Law Court has not abandoned the burden-shifting analysis, and this Court is obligated to apply it.

The Court must examine the timing between when she disclosed that she wore hearing aids and when Mahoney suffered an adverse employment action

---

⁵ Defendant relies on federal cases that define the causation requirement as a "but for" test. *See Winslow v. County of Aroostook,* 2013 WL 594760, at *9 (D. Me. 2013) ("Plaintiff can only survive summary judgment if a reasonable fact finder could conclude that disability was the but-for cause of her termination."). Although this may be the federal standard, Maine case law does not use the "but for" language. *See Caruso v. Jackson Lab.,* 2014 ME 101, ¶ 13, ___ A.3d ___ ("We have explained that the jury must be instructed that even if more than one factor affects the decision to dismiss an employee, the employee may recover if one factor is unlawful discrimination and in fact it made *a difference* in determining whether he was to be retained or discharged." (emphasis in original) (quotation marks and brackets omitted)).

9

from York Hospital. Plaintiff first informed her colleague Gregoire that she was wearing hearing aids at the end of September. Although defendant argues that plaintiff has failed to demonstrate that any other person at York Hospital had knowledge of Mahoney's hearing aids, Mahoney has introduced evidence that the hearing aids were visible during surgeries and that she had to change the batteries at the hospital from time to time while at work. Also, one of Mahoney's co-workers, Karyn Fisette, noticed the hearing aids because she could see the batteries and a small wire and could occasionally hear a ringing noise. (Pl.'s Add. S.M.F. ¶ 27.) Nurse Jessica DeLeon was also aware that Mahoney used hearing aids. (Pl.'s Reply S.M.F. ¶ 27.) Based on these facts, a fact-finder could infer that her supervisors had knowledge of Mahoney's hearing disability.

At some point in the fall Mahoney was placed on a 90-day improvement plan, which involved evaluations from Mahoney's supervisors. Although it is unclear exactly when the improvement plan was implemented, it occurred before December 2011 and therefore within about two months of when Mahoney started wearing hearing aids. This is sufficient for Mahoney to carry her burden at the prima facie stage of the analysis. *See Daniels*, 2012 ME 80, ¶ 21, 45 A.3d 722 (finding that a gap of two months between protected activity and an employee's discharge satisfied plaintiff's burden to establish a prima facie case of retaliation).

b. Employer's Non-Discriminatory Reason

York Hospital argues that Lockhart placed Mahoney on the improvement plan because of legitimate concerns about her job performance. Mahoney concedes that York Hospital has met its burden at this stage. (Pl.'s Opp. Mem., at 5.)

10

### c. Evidence of Pretext

Mahoney argues that York Hospital's concerns about Mahoney's job performance were pretext. Mahoney argues that before she disclosed that she was wearing hearing aids, she received only positive reviews of her job performance. She points to the June 2011 evaluation and Lockhart's message in the birthday card to her to show that there were no issues with her performance. In addition, she argues that the improvement plan was not established procedure at York Hospital and had never been implemented for any other employee but Mahoney. She also points out that the improvement plan was ultimately cancelled because Mahoney felt singled out, which suggests that it was not necessary to improve her job performance. Given these facts, a fact-finder could believe that York Hospital's proffered reasons for placing her on the improvement plan were pretext.

### 3. Retaliation

Similar to a claim for discrimination, a claim for retaliation requires a showing that: (1) plaintiff engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *Daniels*, 2012 ME 80, ¶ 21, 45 A.3d 722. Again, the Court applies the burden-shifting analysis, which allows the employer to produce evidence of a non-discriminatory reason for the adverse action, and finally, the employee has the burden to show that the employer's proffered reason is untrue. *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 20, 824 A.2d 48; *Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶ 15, 66 A.3d 7.

11

### a. Prima Facie Case

Mahoney relies on the filing of her MHRC complaint as the protected activity in this case. Under the MHRA, "[a] person may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under [the MHRA] or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this Act." 5 M.R.S. § 4633. There is no dispute that filing a good faith complaint with the MHRC is protected activity. The warnings Mahoney received about her job performance and that she would be terminated if she did not improve constitute an adverse employment action.

The issue is whether Mahoney has generated an issue of material fact on the causal link element of the prima facie case. Mahoney has produced evidence showing that shortly after York Hospital received notice of Mahoney's complaint, Lockhart began taking notes about Mahoney's performance and her coworkers started treating her differently than before the complaint was filed. In addition, Lockhart ordered Cook to provide a written evaluation of Mahoney's performance in May 2012, even though Mahoney was evaluated in January and Lockhart told Chayer in February that Mahoney was doing fine and he did not mention any problems with Mahoney's performance. After Lockhart received Cook's evaluation, he issued Mahoney an oral warning in June and a final warning in August 2012. Given the timing of these events, Mahoney has met her burden of establishing a prima facie case for retaliation.

12

## b. Employer's Non-Discriminatory Reason

York Hospital has also met its burden of showing a legitimate reason for the discipline by producing evidence that Lockhart had received complaints about Mahoney's job performance.

## c. Evidence of Pretext

Finally, at the third step of the analysis, Mahoney has again met her burden of producing evidence sufficient for a fact-finder to conclude that York Hospital's proffered reasons for the disciplinary actions are untrue. A fact-finder could conclude that leading up to the MHRC complaint, Mahoney's job performance was improving even though she still needed some training. Once the complaint was filed, her coworkers began acting rude to Mahoney, including Cook who was charged with evaluating Mahoney's performance. Finally, a fact-finder could find that York Hospital failed to adhere to its disciplinary policy in issuing Mahoney the final warning in August, and the hospital failed to fully investigate Mahoney's complaints about her coworkers' behavior toward Mahoney. Drawing all favorable inferences in favor of Mahoney, a fact-finder could rationally find that York Hospital viewed Mahoney as a troublesome employee because of her complaints about discrimination and took steps that forced her to resign.

## 4. Exhaustion of Administrative Remedies

Under 5 M.R.S. § 4622, monetary damages and attorney's fees are only recoverable if plaintiff filed a complaint with the MHRC and the MHRC took some action on the complaint. *See Gordan v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942 (dismissing plaintiff's discrimination claims as moot where plaintiff failed to bring a claim before the MHRC). Mahoney filed her claim with the

13

MHRC on March 22, 2012. On April 3, 2012, she amended the complaint to include a count for retaliation.

York Hospital argues that Mahoney failed to exhaust her administrative remedies on her retaliation claim because she has changed her theory behind the retaliation claim. York Hospital argues that in Mahoney's complaint filed with the MHRC, which she amended to add a count for retaliation, Mahoney alleged that her original complaint of discrimination in December 2011 was the protected activity. In her opposition to summary judgment, Mahoney relies on the actual complaint she filed with MHRC in March 2012.

"[R]etaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency- *e.g.*, the retaliation is for filing the agency complaint itself." *Clockedile v. New Hampshire Dep't of Corrections*, 245 F.3d 1, 6 (1st Cir. 2001). Mahoney's allegations of retaliation are sufficiently related to her complaints of discrimination and retaliation filed with the MHRC.

### 5. Constructive Discharge

"[C]onstructive discharge does not exist as an independent cause of action under Maine statutory or common law." *Levesque v. Androscoggin County*, 2012 ME 114, ¶ 8, 56 A.3d 1227. Accordingly, count III of Mahoney's complaint fails as a matter of law.

The entry is:

> York Hospital's motion for summary judgment is DENIED as to counts I and II and GRANTED as to count III.

14

Dated: December 3, 2014

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Guy Loranger Esq
Defendant-Robert Brooks Esq/Ben Ford Esq

15

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. PORSC-CV-13-73
JAW - Cum - 2/19/2014

STACY MAHONEY,

Plaintiff,

STATE OF MAINE
Cumberland, ss, Clerk's Office

FEB 19 2014

RECEIVED

v.

YORK HOSPITAL,

Defendant.

ORDER ON MOTION TO
COMPEL RESPONSE TO
SUBPOENAS

This matter is before the Court on defendant's motion to compel responses to

subpoenas served on third parties.

Defendant alleges that plaintiff was involved in placing a note on her former

supervisor's car on September 26, 2013 that read: "How did it feel – not to get that

InterMed job. See what evil gets you??" (DeLeon Aff. ¶ 6; Ex. G.) Plaintiff's former

supervisor is expected to be a witness at trial. Defendant alleges that plaintiff and her

friend Karyn Fisette conspired to place the note. To prove that plaintiff was involved in

placing the note, defendant subpoenaed the following records:

1. Plaintiff's bank records from T.D. Bank from September 1 – October 31, 2013.
2. Security camera footage from the Bank of America branch at 218 York Street, York, Maine on September 26, 2013 between 4:00pm and 7:00pm and on October 3, 2013 between 5:00am and 7:00pm.
3. Karyn Fisette's phone records from Verizon Wireless from September 20 – October 10, 2013.
4. Plaintiff's phone records from AT&T from September 20 – October 10, 2013.

Plaintiff objects on the grounds that the requested records seek irrelevant evidence,

constitute an invasion of privacy, and are overly broad.

The scope of discovery is any matter that is relevant to the pending action. M.R. Civ. P. 26(b)(1). Plaintiff has no interest in the records sought by requests two and three, and she therefore lacks standing to challenge those subpoenas. *See Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981) ("As a general matter, a party has no standing to seek to quash a subpoena directed to one who is not a party."). As to requests one and four, plaintiff does not claim that any of the requested documents are privileged, and the subpoenas do not subject plaintiff to an undue burden. If plaintiff did conspire to place the note on her former supervisor's car, that evidence is relevant to defendant's case. Thus, the subpoenas are targeted to produce relevant evidence and they are not objectionable.

The entry is:

Defendant's motion to compel responses to subpoenas is GRANTED.

Dated: 2/18/14

Joyce A. Wheeler
Justice, Superior Court

Plaintiff Mahoney-Guy Loranger Esq
Defendant-Robert Brooks Esq/Benjamin Ford Esq

2