**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-3244

———————————

IN RE: ANDREW E. BRESSMAN,
                                                            Debtor


JAMES A. BAXTER; ANDREW BAXTER;
J.A. BAXTER LIFE INVESTMENT TRUST;
RICHARD KATZ; ROBERT THOMAS;
EGI 1985 RETIREMENT BENEFIT TRUST

v.

ANDREW E. BRESSMAN


JAMES A. BAXTER, individually and as successor-in-
interest to the James A. Baxter Life Investment Trust;
RICHARD KATZ; ROBERT THOMAS,
                                                            Appellants

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. No. 2-14-cv-05314)
District Judge:  Honorable Kevin McNulty

———————————

Argued on March 20, 2017

Before: AMBRO, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 18, 2017)

Max Folkenflik          [Argued]
Folkenflik & McGerity
1500 Broad Street
21st Floor
New York, NY 10036
          *Counsel for Appellants*

Ryan T. Jareck
Cole Schotz
1325 Avenue of the Americas
New York, NY 10019

Michael D. Sirota          [Argued]
Warren A. Usatine
Cole Schotz
25 Main Street
Court Plaza North, P.O. Box 800
Hackensack, NJ 07601
          *Counsel for Appellee*

————————————

OPINION

————————————

ROTH, Circuit Judge

In this appeal we are asked to decide whether Max Folkenflik, Esq., committed fraud on the court. The Bankruptcy Court determined that Folkenflik had intentionally deceived the court. As a result, the court vacated the default judgment it had previously entered in favor of Folkenflik's clients. The District Court affirmed. Finding no error, we will affirm.

I.

This action was commenced as an adversary complaint in a Chapter 11 bankruptcy proceeding brought by Andrew Bressman. The Plaintiffs are victims of fraudulent activities by Bressman. In the 1990's, Bressman and others had engaged in manipulation of stock prices. The Plaintiffs brought civil securities fraud and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against Bressman and his co-defendants in the United States District Court for the Southern District of New York. The Plaintiffs were represented by Folkenflik. These civil actions against Bressman were stayed when Bressman filed for bankruptcy in the Bankruptcy Court for the District of New Jersey. In response, the Plaintiffs filed the adversary complaint against Bressman.

The civil securities fraud and RICO claims continued against Bressman's co-defendants before Judge John Koeltl in the Southern District of New York. On August 13, 1998, claims against the co-defendants in one of the suits were settled for ▮▮▮▮▮. On August 28, Folkenflik, as attorney for Plaintiffs, received the full settlement amount, minus a $75,000 prompt payment discount. The parties' Settlement Agreement,

3

approved by Judge Koeltl, was subject to a confidentiality order, which incorporated the following language from the parties' stipulated confidentiality agreement:

> It is hereby stipulated, consented and agreed to by counsel for the parties in this action, that they will not disseminate and/or publicize the existence of or disclose the financial terms of any settlement agreement with any defendants, except as further set forth in this Stipulation and order; that this confidentiality provision does not prohibit or restrict the parties from responding to any inquiry about the documents produced or their underlying facts and circumstances by any state or federal regulatory agency, including the Securities and Exchange Commission or any self-regulatory organization . . ..[1]

The adversary proceeding continued against Bressman in the Bankruptcy Court.

Several months after the Settlement Agreement was reached and the funds received, the Plaintiffs sought a default judgment in the Bankruptcy Court against Bressman. The court ordered them to submit an affidavit detailing their damages. In March 1999, Folkenflik, as their attorney, submitted an affidavit that recounted the history of the proceedings against Bressman and his co-defendants. The affidavit indicated that the damages totaled $5,195,081 plus interest. Although Folkenflik's affidavit provided a comprehensive account of the underlying proceedings, it made

---

[1] App. A38.

4

no mention of the $▮ million settlement that he had obtained against Bressman's co-defendants or even of the fact of the settlement. Explicitly noting its reliance on Folkenflik's affidavit, the Bankruptcy Court entered a default judgment against Bressman for $5,195,081 on February 7, 2000. The Bankruptcy Court ordered Folkenflik to submit a separate application for RICO damages. In September 2002, the Plaintiffs filed an application for RICO damages and attorneys' fees. No mention was made in that application that the Plaintiffs had already been paid ▮ on account of their losses. In July 2003, still unaware of the Settlement Agreement, the Bankruptcy Court entered a RICO judgment for treble damages, totaling $15,585,243. The court noted that this "amount constitute[d] treble the damages found and awarded by this Court as Plaintiff's out-of-pocket losses . . .."[2] The court also awarded $910,855.93 in attorneys' fees.[3]

Bressman was incarcerated from 2003 until 2006 in connection with his conviction in New York state court for enterprise corruption and grand larceny. During that time and the seven years that followed, Folkenflik made no attempt to recover on the default judgment because, in his view, the likelihood of Bressman having substantial assets was remote. In 2013, however, Folkenflik learned that Bressman was going to receive a potential payment of $10 million, so Folkenflik set out to have the $15,585,243 judgment satisfied. He filed *ex parte* applications on behalf of the Plaintiffs in the Southern District of New York and in the District of New Jersey to appoint a receiver to search for and seize Bressman's assets.

---

[2] App. A267-68.
[3] App. A268.

5

The court in New Jersey expressed skepticism that emergency *ex parte* relief was warranted, given Folkenflik's failure to collect for ten years. The application was denied in open court and was withdrawn the same day. In New York, Judge Ramos granted the application on September 26, 2013. On October 2, Folkenflik filed a new application in the District of New Jersey asking the court to authorize the receiver, who had been appointed by the Southern District of New York, to act in New Jersey. Contrary to Local Rule, Folkenflik did not mark on the civil cover sheet that this action was related to the unsuccessful application that he had filed in the District of New Jersey several days earlier.[4] As a result, the case was assigned to a different judge who granted the *ex parte* application. Searches and seizures were executed in New York and New Jersey on October 11.

In declarations appended to Plaintiffs' *ex parte* applications, Folkenflik indicated that, as a result of post-judgment interest, the judgment against Bressman totaled $30,895,913.39. Nothing in these submissions indicated that Folkenflik had already collected $███ million on behalf of the Plaintiffs. Indeed, in his brief in support of his application in the Southern District of New York, Folkenflik stated: "With post judgment interest, the Judgment's current value is $30,895,913.39. To date – more than ten years later – Plaintiffs have not seen a dime of this amount."[5]

---

[4] During a sanctions hearing before the Southern District of New York, the court found "deeply troubling the suggestion that [Folkenflik] did not completely, fairly, and accurately disclose to [the District of New Jersey] the application they had previously made . . .." App. A43.
[5] App. A41.

6

Then, on October 13, 2013, Bressman's attorney, David Wander, wrote to Folkenflik, asking if anyone had made payments on the judgment.[6] Folkenflik certified that it was not until then that he looked at the docket sheet and saw that the settlement was listed. On October 16, Folkenflik replied to Wander, stating "[t]he complete and accurate response to your specific question is no, there have not been any payments from any source regarding the Bressman Judgment."[7] Folkenflik added, in connection with this letter: "I . . . advised him of all of the facts I thought I was allowed to advise him of, given the public disclosure of the existence of the settlement, and that was what I was able to say,"[8] namely, that certain defendants were dismissed from one of the civil actions, "subject to a settlement agreement that was submitted to Judge Koeltl with the confidentiality 'so ordered' and the agreement sealed by the order of the Court in or about October 1998."[9] That action was then marked closed. Folkenflik certified that he was not aware of the reference to the settlement in the court docket until October 2013.[10]

October 2013 was the first time that the Bankruptcy Court, the District Courts in New York and New Jersey, and

---

[6] App. A368.
[7] App. A41.
[8] App. A368.
[9] App. A509-10.
[10] App. A42.

Bressman[11] learned that Folkenflik had successfully negotiated a settlement agreement with Bressman's co-defendants. The orders granting the Plaintiffs' *ex parte* applications were then vacated in both courts and the seized materials were returned.

On January 7, 2014, Judge Koeltl in the Southern District of New York held a hearing to determine whether Folkenflik was obligated to disclose the Settlement Agreement and to whom. Folkenflik argued that, absent the confidentiality order, he would have informed the Bankruptcy Court of the Settlement Agreement even though he believed it was "immaterial" and irrelevant to the underlying default judgement.[12] By oral order, the court instructed the parties to provide counsel and all involved judges with details of the Settlement Agreement.

---

[11] Although Bressman claims he was unaware of the Settlement Agreement until October 16, 2013, Folkenflik argues Bressman was aware of the Agreement as early as "sometime in the 90's." Folkenflik also contends that Bressman had constructive notice of the Settlement Agreement's existence because it was inadvertently disclosed on the Southern District of New York's public docket. The Bankruptcy Court did not credit this assertion because "Folkenflik certifie[d] that he, himself, was not aware of this public reference until October 2013." App. A42. In any event, the date when Bressman became aware of the Agreement is not germane to the merits of our discussion. The inquiry here is primarily focused on the representations that Folkenflik made to the Bankruptcy Court when he appeared *ex parte* in 1999 and which he continued to present to the Bankruptcy Court and the District Courts in the following years.

[12] App. A384.

On January 9, 2014, a hearing was held by Judge Ramos in the Southern District of New York to determine whether Folkenflik's decision to file the *ex parte* application to collect on the default judgment with no mention of the Settlement Agreement constituted sanctionable misconduct. The judge noted that the validity of the default judgment against Bressman was not at issue in that hearing.[13] At the conclusion of the hearing, the court declined to impose sanctions.

Bressman then asked the Bankruptcy Court for the District of New Jersey to reopen the proceeding related to the Plaintiffs' adversary complaint, vacate the underlying default and RICO judgments, and dismiss the Plaintiffs' complaint with prejudice on the grounds that the judgment was fraudulently obtained. On March 20, 2014, the Bankruptcy Court held a hearing. Bressman's counsel argued that "if there were ever a case to vacate a judgment based upon fraud on the Court, it's this case. There is no question that Mr. Folkenflik intentionally concealed and affirmatively misrepresented critical facts to this Court in an effort to obtain undeserved double recovery for his clients and enormous fees for himself."[14]

Folkenflik urged that he would have informed the Bankruptcy Court of the Settlement Agreement if doing so had not been prohibited by the confidentiality order. In the alternative, Folkenflik argued that Bressman's motion was untimely. The Bankruptcy Court rejected Folkenflik's contentions. Finding that Folkenflik's conduct was intentional

---

[13] App. A497-98.
[14] App. A617.

and was the type of egregious misconduct that constitutes fraud on the court, the Bankruptcy Court vacated the default judgment and dismissed the adversary complaint with prejudice. The District Court affirmed the Bankruptcy Court's order, and this appeal followed.

## II.

The District Court had jurisdiction to consider Folkenflik's appeal of the Bankruptcy Court's order under 28 U.S.C. § 158(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.

The Plaintiffs raise three arguments on appeal. First, they contend that Bressman's motion to vacate the default judgment was time barred. Whether the underlying motion was barred is a question of law, and as such our review is plenary.[15] Second, the Plaintiffs contend that Folkenflik's conduct does not rise to the level of egregious misconduct that constitutes intentional fraud on the court. Because the facts are not in dispute, we exercise plenary review of whether Folkenflik committed intentional fraud.[16] Finally, the Plaintiffs claim that that the sanction of dismissal with prejudice was an abuse of the Bankruptcy Court's discretion. As with other forms of equitable relief, our review of the Bankruptcy Court's decision to vacate the underlying default

---

[15] *United States v. Hull*, 456 F.3d 133, 137 (3d Cir. 2006) (citation omitted).
[16] *Id.* (citation omitted).

judgment is for abuse of discretion.[17]  We review its findings of fact for clear error.[18]

## III.

### A.

The Plaintiffs first contend that the Bankruptcy Court's grant of relief was procedurally barred because Bressman's motion was filed more than ten years after the alleged fraudulent conduct.  In the alternative, the Plaintiffs assert that the action was barred by the doctrine of laches.  We disagree with both contentions.

Federal Rule of Civil Procedure 60(b) authorizes relief from a final judgment on six separate grounds.[19]  Rule 60(b)(3) specifically permits a court to relieve a party from a final judgment for "fraud[,] . . . misrepresentation, or misconduct[,]"[20] and subsection 6 permits courts to do so for "any other reason that justifies relief."[21]  As the Plaintiffs note, Rule 60 motions alleging fraud are ordinarily subject to a one-year limitations period.[22]  Although they correctly recite the Rule's time bar, they do so to no avail.  Rule 60 has no applicability where, as here, a party requests relief from a final

---

[17] *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014).
[18] *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995).
[19] Fed. R. Civ. P. 60(b).
[20] Fed. R. Civ. P. 60(b)(3).
[21] Fed. R. Civ. P. 60(b)(6).
[22] Fed. R. Civ. P. 60(c)(1).

judgment in response to an opponent's alleged fraud on the court. We settled this issue in *Averbach v. Rival Mfg. Co.*, where we held that "the one year time limit in the rule, by virtue of the rule's very text, does not apply to independent actions" such as those for fraud on the court.[23] Our decision in *Herring v. United States* reaffirmed our holding in *Averbach*: "an independent action alleging fraud upon the court is completely distinct from a motion under Rule 60(b)."[24]

This concept that the inherent power of federal courts to vacate a fraudulently obtained judgment—even years after the judgment was entered—has long been recognized by the Supreme Court.[25] Consistent with this precedent, the bankruptcy court here granted the requested relief because it found that Folkenflik committed fraud on the court. We therefore see no basis to conclude that the time limits of Rule 60 barred the court's consideration of the appellee's motion to vacate the underlying default judgment.

The Plaintiffs' contention that the doctrine of laches counsels against vacating the underlying default judgment similarly fails. "Laches is 'a defense developed by courts of

---

[23] 809 F.2d 1016, 1020 (3d Cir. 1987). Although *Averbach* was an independent action, we noted there that "the elements for a cause of action for such relief in an independent action are not different from those elements in a Rule 60(b)(3) motion . . .." *Id.* at 1022-23.

[24] 424 F.3d 384, 389 (3d Cir. 2005) (citation omitted).

[25] *See Hazel-Atlas Glass Co.*, 322 U.S. at 248-49 (recognizing that federal courts possess inherent power to vacate a judgment obtained by fraud on the court); *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (same).

12

equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'"[26] The defense "applies in those extraordinary cases where the plaintiff 'unreasonably delays in filing a suit,' and, as a result, causes 'unjust hardship' to the defendant. Its purpose is to avoid 'inequity.'"[27] The Plaintiffs bear the burden of proving that the elements of laches— "inexcusable delay in instituting suit and prejudice resulting to the respondent from such delay"—are met.[28] Arguing that Bressman unjustifiably slept on his rights for ten years, the Plaintiffs challenge the District Court's conclusion that the elements of laches are not present. However, because "[b]y its very nature the doctrine [of laches] addresses itself to the sound discretion of the trial judge[,] . . . absent an abuse of discretion, we will not disturb the court's determination."[29]

The Bankruptcy Court did not credit Folkenflik's assertion that Bressman was aware of the payment as early as 1999. On appeal, the District Court affirmed that laches were not applicable here, stating:

---

[26] *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960 (2017) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967, 1973 (2014)).

[27] *Petrella*, 134 S. Ct.at 1979 (Breyer, J., dissenting) (citations omitted).

[28] *Kane v. Union of Soviet Socialist Republics*, 189 F.2d 303, 305 (3d Cir. 1951) (en banc); *see also Waddell v. Small Tube Prod., Inc.*, 799 F.2d 69, 74 (3d Cir. 1986) ("The party asserting the defense . . . bears the burden of proof." (citation omitted)).

[29] *Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974) (citation omitted).

> A vague statement about what Bressman "heard" at some unspecified time and place during the decade of the 1990's is not much to go on. But in any event, I find that [the Bankruptcy Court] acted here within the law and the bounds of his discretion. . . . This was not an adversarial proceeding but an application for a default judgment. . . . Under the circumstances, [the Bankruptcy Court] could permissibly make an equitably based ruling "that a fraud committed upon the court could be time barred offends all notions of integrity and equity. There can be no protections against such intentional conduct."[30]

We agree. Accordingly, we cannot say the Bankruptcy Court abused its discretion in concluding that Bressman's motion was not barred by the doctrine of laches.

## B.

We next address whether Folkenflik's failure to disclose the Settlement Agreement rises to the level of intentional fraud. As officers of the court, attorneys are required "to conduct themselves in a manner compatible with the role of courts in the administration of justice."[31] This responsibility is sometimes—albeit rarely—disregarded. When, however,

---

[30] App. A9-10, citing the Bankruptcy Court, App. A45.

[31] *In re Snyder*, 472 U.S. 634, 644-45 (1985); *see also Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993) ("As an officer of the court, every attorney has a duty to be completely honest in conducting litigation.").

14

counsel has failed to act with candor, preservation of the integrity of the judicial process may require courts to depart from their usual adherence to the principle that final judgments should be left undisturbed.[32] We confront one such situation here.

A court may set aside a judgment based upon its finding of fraud on the court when an officer of the court has engaged in "egregious misconduct."[33] We have said that such a finding "'must be supported by clear, unequivocal and convincing evidence'"[34] of "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself . . .."[35] In addition, fraud on the court may be found only where the misconduct at issue has successfully deceived the court.[36] Folkenflik contests the Bankruptcy Court's findings on two

---

[32] *See Hazel-Atlas Glass Co.*, 322 U.S. at 244 (recognizing that that "under certain circumstances, one of which is after-discovered fraud," a court may exercise its equitable powers to vacate judgments "to fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the finality of judgments).

[33] *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180, 195 (8th Cir. 1976) (internal quotation marks omitted)).

[34] *Id.* at 387 (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d at 195).

[35] *Id.* at 390.

[36] *Id.*

grounds: First, he claims that any fraud was not intentional,[37] and second, he argues that the alleged deceit does not constitute the kind of egregious misconduct that the fraud on the court doctrine aims to address. Both contentions are belied by the properly found facts.

Although direct evidence of intent will rarely be available, it may be inferred from the surrounding circumstances. Folkenflik's intentions were clear: He set out to recover the full amount of the default judgment without any offset for the settlement with the co-defendants. Folkenflik's scheme manifested itself in early March of 1999 when he filed an affidavit to support the default judgment he sought against Bressman. The affidavit was comprehensive: It recounted the history of the related proceedings, scrupulously detailed the damages each Plaintiff sought, provided a calculation of interest, and carefully described Folkenflik's involvement in the matter. Conspicuously, the affidavit omitted any mention of the $▮ million Folkenflik recovered on behalf his clients several months earlier. As Folkenflik was aware, the Bankruptcy Court was not presented with any information from Plaintiffs' adversaries or from any nonparty because Folkenflik was appearing *ex parte*.

While Folkenflik claims that he never intended to collect on the judgment without first ensuring that the appropriate offset would be applied, the record provides strong support for a conclusion to the contrary. First, this contention is discredited by Folkenflik's own assertion that he was under no obligation to inform the court of Bressman's right to a set

---

[37] By considering this argument, we are in no way conceding that fraud is not an intentional tort.

16

off.[38]  Second, Folkenflik indicated in his brief, supporting his *ex parte* application for a receiver in the Southern District of New York that "[w]ith post-judgment interest, the Judgment's current value is $30,895,913.39" and that "[t]o date – more than ten years later – Plaintiffs have not seen a dime of this amount."[39]  This declaration, as with Folkenflik's other attestations throughout the underlying proceedings, is grossly misleading and illustrates an intent to receive an unjustified recovery.

Folkenflik made a deceptive representation to the court in his affidavit, obtained a default judgment, had it trebled, and was awarded interest and attorneys' fees.  We have no trouble concluding that his failure to disclose the settlement reflects his intent to commit fraud on the court.[40]

Folkenflik also asserts—indefatigably—that he would have informed the court of the settlement payment had he not

---

[38] App. A384, A537-38.

[39] App. A303-04.

[40] The New York and New Jersey District Courts declined Bressman's invitation to impose sanctions in response to Folkenflik's lack of candor with respect to the 2013 *ex parte* enforcement proceedings.  Folkenflik argues that the courts' refusal to impose sanctions demonstrates that he did not act with the requisite intent.  This argument is of no moment since our determination is based on the deceptive representations Folkenflik made in the 1999 Affidavit and not with his *ex parte* enforcement applications.  Further, it is not clear whether considerations concerning sanctionable conduct are identical or analogous to those concerning fraud on the court.  We need not make this determination today.

17

been barred from doing so by the confidentiality order. This contention is unconvincing. Folkenflik was not, as he suggests, left only with the options of concealment or impermissible disclosure. He was aware that relevant facts were being omitted from his affidavit. Even if he believed that the confidentiality order prohibited him from disclosing to the Bankruptcy Court the existence of the Settlement Agreement, he could have so stated in his affidavit and have asked either – or both – the District Court in the Southern District of New York and the Bankruptcy Court in New Jersey for guidance. His failure to do so is consistent with an intent to defraud the court in order to maximize the recovery.

Folkenflik's alternative attempts to justify his nondisclosure fare no better. He contends that he cannot be held responsible for his omissions because he was not obligated to inform the court of Bressman's right to a setoff.[41] In his view, Bressman had notice of the adversary proceedings, failed to act, and therefore waived any defenses. Bressman denies that he had any knowledge of the settlement until October 2013. However, whether Bressman did or did not have knowledge does not forgive Folkenflik for his misrepresentations to the court. Moreover in this regard, any right to set off is not relevant to Folkenflik's failure to inform the court of the fact of the settlement. In addition, Folkenflik's position is further compromised by the fact that Bressman was absent. The *ex parte* nature of the proceedings was not a license for Folkenflik to deceive the court by deliberately failing to bring the material fact of the settlement to the court's attention.

---

[41] App. A537-38.

In fact, Folkenflik's duty to deal with the court honestly and with integrity was particularly important in light of the non-adversarial nature of the *ex parte* proceedings. In such a proceeding, the court depends on the integrity of appearing counsel because only he can ensure that the court has received the full scope of information pertinent to the merits of its considerations. Folkenflik was not only obligated to submit truthful information, but he was also required to disclose to the court any material information of which he was aware. Because his failure to do so has sufficiently undermined the judicial process, we conclude that a finding of fraud on the court will lie.

This determination brings us to Folkenflik's next argument: that a "fraud on the court"-based claim can succeed only when it is based on perjurious misconduct. This suggestion is based on an incorrect reading of our *Herring* opinion, which establishes that perjury by a witness does not, by itself, constitute fraud on the court.[42] Understood in its proper context, *Herring*'s pronouncement was appropriately narrow and has no relevance here since Bressman's motion does not pertain to a witness who has allegedly committed perjury. There is an important distinction between perjury that is committed by a witness and fraudulent conduct that is directed at the court by one of its own officers. The latter has a much greater likelihood of undermining the working of the normal process of adjudication because courts rely on the integrity of their officers. Folkenflik is a licensed attorney who exploited his privilege to practice before the courts by not revealing the details of a relevant settlement payment. This

---

[42] 424 F.3d at 390.

19

deceit maximized his clients' recovery—and, in turn, his fee. *Herring* is distinguishable.

Having determined that the record evidences an intentional scheme to improperly influence the court, we next address whether Folkenflik's ploy is the kind of misconduct that the fraud on the court doctrine seeks to address. We conclude that it is. The Supreme Court has warned that fraud on the court actions must be "reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata."[43] Taking heed of this instruction, we held in *Herring* that only "'egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel'" can be characterized as the kind of fraud that warrants relief from a judgment.[44]

The facts here demonstrate "a deliberately planned and carefully executed scheme to defraud . . .."[45] In his affidavit supporting his petition for a default judgment, Folkenflik omitted that Bressman's co-defendants had settled their claims in one of the New York actions: conduct which is incapable of innocent explanation. Folkenflik, in his capacity as an officer of the court, made sworn averments to obtain a default judgment and damages. Knowing that the averments had omitted a material fact, Folkenflik nevertheless allowed the Bankruptcy Court to rely upon their truthfulness. The court's reliance on the affidavit impugned its integrity.

---

[43] *United States v. Beggerly*, 524 U.S. 38, 46 (1998) (citing *Hazel-Atlas Glass Co.*, 322 U.S. at 244).

[44] 424 F.3d at 390 (citation omitted).

[45] *See Hazel-Atlas Glass*, 322 U.S. at 245.

We conclude that the misconduct at issue here is sufficiently egregious. Because there is clear, unequivocal, and convincing evidence showing that Folkenflik committed fraud on the court, we will affirm the judgment of the District Court.

C.

Finally, Plaintiffs contend that the Bankruptcy Court could not grant relief from the default judgment without first weighing the factors set forth in *Poulis v. State Farm Fire & Casualty Co.*[46] This argument requires little discussion. "In *Poulis*, we held that a district court must consider six factors before it may dismiss a case as a sanction . . .."[47] We have since required consideration of *Poulis* in only a limited number of additional contexts.[48] "Our application of *Poulis* in those contexts comports with the underlying concern that *Poulis* sought to address, namely that dismissal as a sanction before adjudication of the merits deprives a party of her day in court."[49] Our precedents have reaffirmed that the *Poulis* factors are required to "preserve the ability of the parties to try their cases on the merits."[50] These concerns are not present here. In fact, the principle underlying *Poulis,* that disputes should be decided on their merits, is the very basis for our

---

[46] 747 F.2d 863 (3d Cir. 1984).

[47] *Knoll v. City of Allentown*, 707 F.3d 406, 408 (3d Cir. 2013).

[48] *Id*. at 409 (listing cases).

[49] *Id*.

[50] *Id*. at 410.

disfavor of default judgments.[51]  As set forth above, our review of the decision to vacate a default judgment under the circumstances presented here asks whether a court has abused its discretion.  Because the Bankruptcy Court has not done so, we will affirm.[52]

## IV.

"Membership in the bar is a privilege burdened with conditions."[53]  Among the most oft-cited is the condition that attorneys will honor the duty of loyalty they owe to each of their clients.  In so doing, attorneys must not—and in most cases do not—disregard their inherent obligation to the system of justice.[54]  Because Folkenflik has conducted himself in a way that has improperly interfered with the administration of justice, protection of the court's integrity requires us to act.  In light of this responsibility, we will affirm the judgment of the District Court.

---

[51] *Harad v. Aetna Cas. & Sur. Co.,* 839 F.2d 979, 982 (3d Cir. 1988) (noting that we have "adopted a policy disfavoring default judgments and encouraging decisions on the merits" (citation omitted)).

[52] To the extent that Plaintiffs seek to use *Poulis* to challenge the Bankruptcy Court's decision to dismiss their underlying action with prejudice, the *Poulis* factors are plainly satisfied. In *Poulis*, we developed factors to consider when determining if misconduct is grave enough to warrant the drastic sanction of dismissal.  *Poulis*, 747 F.2d at 868.  A fraud on the court is unquestionably such misconduct.

[53] *In re Snyder*, 472 U.S. at 644 (citation and internal quotation marks omitted).

[54] *Id.*