NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 19-1294

————————————

800 SERVICES, INC.,
                                        Appellant

v.

AT&T CORP.

————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:98-cv-01539)
District Judge: Honorable Esther Salas

————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 7, 2020

Before: McKEE, BIBAS, and FUENTES, *Circuit Judges*

(Filed: August 20, 2020)

————————————

OPINION*

————————————

BIBAS, *Circuit Judge*.

   Litigants routinely disagree about how courts should view evidence. But the losing party cannot just repackage that disagreement to claim that the winning party committed fraud on the court.

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Starting in 1990, 800 Services agreed to aggregate telephone traffic for AT&T and to send AT&T a certain amount of annual revenue. But in 1995, 800 Services failed to meet its annual revenue commitment. It thought it could avoid paying charges for coming up short by restructuring its contract with AT&T or by transferring some of its telephone traffic to another aggregator. When those efforts failed, it ultimately ended the agreement. AT&T assessed $1.4 million in charges.

To avoid paying up, 800 Services sued AT&T in 1998. AT&T counterclaimed. In 2000, the District Court granted summary judgment for AT&T and entered a final judgment for more than $2 million against 800 Services. We affirmed. *800 Servs. Inc. & AT&T Corp.*, 30 F. App'x 21 (3d Cir. 2002). 800 Services never paid the judgment. Eighteen years later, it moved to vacate the judgment, alleging that the original proceeding was tainted by fraud on the court. *See* Fed. R. Civ. P. 60(b). The District Court denied its motion. 800 Services now appeals.

When the facts are undisputed, we review de novo whether a party committed intentional fraud. *In re Bressman*, 874 F.3d 142, 148 (3d Cir. 2017). And whether the motion is under Rule 60(b) or 60(d), we review the District Court's denial for abuse of discretion. *Jackson v. Danberg*, 656 F.3d 157, 162 (3d Cir. 2011). To prove fraud on the court, 800 Services must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005). The proof of fraud must be "clear, unequivocal and convincing." *Id.* at 387 (internal quotation marks omitted). The District Court held that 800 Services' allegations did not satisfy the first and fourth elements of that test. We agree.

Start with deception. To satisfy the fourth element, 800 Services must show that AT&T "successfully deceived" the District Court in 2000. *In re Bressman*, 874 F.3d at 150. It cannot. In its 1998 complaint, 800 Services alleged that AT&T had wrongfully rejected its attempts to transfer its traffic under the Communications Act. It now argues that AT&T fraudulently misrepresented the record on that point. It also argues that AT&T intentionally introduced deposition testimony by Larry Shipp, who was involved with 800 Services' efforts to transfer traffic, that it knew was false. But there is no evidence that the District Court relied on either of these alleged misrepresentations. The court dismissed the Communications Act claims as barred by the statute of limitations. And its opinion did not even mention Shipp's testimony.

800 Services also alleged in its 1998 complaint that AT&T wrongfully rejected its attempt to restructure. It now argues that the District Court relied on AT&T's purported misrepresentation of the contract's effective date in dismissing its intentional-interference claims. As proof, 800 Services points to the court's statement of fact that the complaint's allegations related to a contract entered into in 1994. But the court did not dismiss 800 Services' claims based on the contract's effective date. Rather, the court relied on the testimony of 800 Services' own president, who said he did not pursue the restructuring and did not think his company qualified for one.

In any event, 800 Services' restructuring-related arguments also fail under *Herring*'s first element: intentional fraud. Essentially, it argues that its reading of the contract with AT&T was so clearly right that AT&T's contrary reading was fraudulent. The contract was hardly so clear. 800 Services focuses on an August 1994 agreement between it and AT&T

3

in which it checked the box next to "upgrade" rather than "new order." App. 413. It alleges that this check mark shows that the contract was not created but just renewed in 1994, so the company was immune from shortfall charges.

That checked box is not clear, unequivocal, and convincing evidence of fraud. In fact, a 1993 agreement was also marked "upgrade," but 800 Services characterizes that one as a new agreement. App. 417; Appellant's Br. 18. And the operative tariff governing AT&T's relationship with businesses like 800 Services spoke of an "upgrade" to a new contract. Supp. App. 35. AT&T communicated this position, citing the relevant tariff provision, to 800 Services' president in a July 1995 letter.

800 Services also directs us to hearsay by AT&T employees and prior preliminary-injunction decisions by the District Court in unrelated litigation, as well as AT&T's representation of the contract's effective date in various court filings to show intentional fraud. This smattering of evidence from other contexts does not show that any misstatements were intentional. And without proving intentionality, 800 Services cannot show that AT&T committed intentional fraud.

On the contrary, AT&T's reading of the contract was debatable. That debate does not make its representation fraudulent. *See Abatti v. Comm'r*, 859 F.2d 115, 118 (9th Cir. 1988). Nor is there any evidence that AT&T deceived or otherwise improperly influenced the court. *See id.* A Rule 60 motion is not a way to present new merits arguments based on evidence that was in the record in 1998.

800 Services again asserts that AT&T violated the law and an FCC order. But it already had a chance to litigate those claims nearly twenty years ago. Still, its claim that AT&T

committed fraud on the FCC is unpersuasive. In 2018, before the District Court, 800 Services acknowledged that the reason it even discussed the alleged fraud before the FCC was to "offer [the] court perspective on [AT&T's] continuous pattern of egregious behavior." Dkt. No. 67 at 1. This is not fraud, especially when compared to the textbook example of *Hazel-Atlas Glass*, in which a lawyer committed fraud on the court when he illicitly got a patent from the Patent Office and then presented it to a federal court. *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 245–46 (1944).

Finally, 800 Services argues that AT&T failed to seek an FCC determination before enforcing the contract. This charge, however, does not relate to the conduct of AT&T's lawyer at summary judgment. It simply restates a cause of action that has already been litigated and dismissed.

* * * * *

800 Services repackages merits arguments from the original litigation as serious allegations of fraud on the court. Because it has not shown fraud on the court, we will affirm the District Court's refusal to reopen this twenty-year-old case.

5