**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3977

_____

CORNERSTONE STAFFING SOLUTIONS, INC.,
Appellant

v.

WEBER, SHAPIRO & COMPANY, LLP; SCOTT D. SHAPIRO

_____

On Appeal from the U.S. District Court for the District of New Jersey
(District Court No.: 2-18-cv-03441)
District Court Judge: Hon. Susan D. Wigenton

_____

Argued November 12, 2020

(Filed: January 7, 2021)

Before: HARDIMAN, SCIRICA and RENDELL, *Circuit Judges*.

_____

OPINION*

_____


Thomas F. Allen, Jr.          [ARGUED]
Todd J. Harlow
Frost Brown & Todd
2101 Cedar Springs Road
Rosewood Court, Suite 900
Dallas, TX 75201

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Steven F. Ritardi
Caramagnola & Ritardi
60 Washington Street, Third Floor
Morristown, NJ 07960
    *Counsel for Appellant*

Lawrence B. Orloff     [ARGUED]
Alexander S. Firsichbaum
Orloff Lowenbach Stifelman & Siegel
44 Whippany Road, Suite 100
Morristown, NJ 07960

George Karousatos
James Passantino
Biancamano & DiStefano
10 Parsonage Road, Suite 300
Edison, NJ 08837
    *Counsel for Appellee*

**RENDELL**, *Circuit Judge*.

Cornerstone Staffing Solutions, Inc. sued Weber, Shapiro, and Company, LLP, an accounting firm, and one of its certified public accountants, Scott Shapiro, (together "Shapiro") for, among other things, professional negligence, negligent misrepresentation, and fraud. The dispute stemmed from Shapiro's accounting work for Valtech Services, Inc. from whom Cornerstone had purchased an IT staffing business. The District Court granted summary judgment to Shapiro, concluding that Cornerstone's failure to submit an affidavit of merit ("AOM") barred its claims. Cornerstone appealed. We will affirm.

I.

In late 2015, Cornerstone signed a letter of intent with Valtech, S.E.—a French company—to buy its U.S.-based IT staffing business. The U.S.-based business was operated by its subsidiary, Valtech Services. After signing the letter of intent,

2

Cornerstone and Valtech Services began the due diligence process. To complete the process, Valtech Services hired Shapiro to assist it in responding to Cornerstone's requests for financial documents and information. Among the documents that Shapiro provided were those showing that Valtech Services had generally positive EBITDA[1] values for each month of 2015[2] and a positive year-to-date EBITDA.

After completing the due diligence process, Cornerstone and Valtech Services negotiated a lower purchase price subject to an upward "initial payment adjustment" if Valtech Services' final financial performance and EBITDA for 2015 met a certain threshold. App. PA 23–24. On December 28, 2015, they memorialized their agreement in an Asset Purchase Agreement.

Later, Shapiro notified Cornerstone that Valtech Services' final 2015 financial performance triggered the "initial price adjustment" such that Cornerstone was obligated to make an additional payment. App. PA 25, 498. Cornerstone refused and, in response, Valtech Services began to "offset" what it believed it was owed. It effectuated this "offset" by withholding payments made to it by its former clients—payments that should have passed through to Cornerstone as the new owner of the business.

With their relationship at an impasse, Valtech Services sued Cornerstone in Texas state court. Cornerstone ultimately countered with its own claims of fraud and alleged

---

[1] "EBITDA" is an accounting term of art and an acronym for "earnings before interest, taxes, depreciation, and amortization." App. PA 20 n.2.

[2] While Cornerstone represents that Valtech Services' documents showed it had positive EBITDA values "for each month of the year," the documents to which Cornerstone cites for support, by contrast, show Valtech Services had some months of negative EBITDA values. Appellant's Br. 7.

that Valtech Services falsely represented, among other things, that its EBITDA values were positive in 2015 when, in fact, they were negative. The Texas litigation later resulted in various jury findings including that Valtech Services had not defrauded Cornerstone.

Still, as the Texas lawsuit was pending, Cornerstone initiated a separate suit against Shapiro in New Jersey based on Shapiro's purported role in aiding and abetting Valtech Services' fraud. Cornerstone brought six causes of action against Shapiro, including fraud, fraudulent inducement, negligent misrepresentation, conspiracy, professional negligence, and declaratory judgment[3] stemming from its belief that Shapiro, like Valtech Services, perpetrated a fraud scheme against it principally by "conceal[ing] . . . the fact that (1) Valtech Services had an entirely separate set of [accounting] books . . . and (2) [Valtech Services'] 'real' financial statements report[ed] . . . losses to Valtech S.E.'s auditors." App. PA 29.

Early in the New Jersey suit, the District Court held a pretrial conference in which the parties discussed when Cornerstone might file its AOM to support its professional negligence claim.[4] After the conference, the parties executed a consent order establishing

---

[3] As the District Court noted, while Cornerstone labeled its claim for declaratory judgment as a cause of action, it is more properly denoted as a form of relief since the availability of declaratory judgment turns on Cornerstone's proof of its substantive claims grounded, in part, on Shapiro's alleged violations of its "professional obligations as a licensed CPA and accounting firm." App. PA 33.

[4] Under New Jersey law, submission of a valid AOM is a prerequisite to bringing certain actions against certain licensed persons. N.J. Stat. Ann. § 2A:53A-26-29. When an AOM is required and a plaintiff fails to submit one, the result is "dismissal with prejudice." A.T. v. Cohen, 175 A.3d 932, 937 (N.J. 2017).

4

a deadline for Cornerstone to file its AOM. The deadline came and went. Eleven months after the deadline passed, Shapiro moved for summary judgment. Shapiro argued that while some of Cornerstone's claims ostensibly required no AOM because they were styled as intentional torts, under state law those claims nonetheless required an AOM because their success turned on proof that Shapiro's conduct deviated from a professional standard of care.

Although Cornerstone did not oppose entry of judgment on its claim for professional negligence—for which an AOM was unquestionably required—it opposed judgment on the remaining claims. See App. PA 3 n.7 (explaining that Cornerstone did not oppose judgment on its professional negligence claim). The District Court, however, agreed with Shapiro and concluded that while Cornerstone's remaining claims may have been characterized as intentional torts, the success of these remaining claims required proof that Shapiro "deviated from professional standards of care." App. PA 7. For this reason, Cornerstone's failure to submit an AOM was fatal.

The District Court further concluded that Cornerstone's failure to submit an AOM was not excusable under the "common knowledge exception" nor under the doctrines of laches or estoppel. The common knowledge exception did not apply because no reasonable juror could determine whether Shapiro was negligent or delinquent in its conduct "without expert assistance." App. PA 8. The District Court concluded that Cornerstone failed to establish its entitlement to equitable relief under laches or estoppel because it failed to show it had been prejudiced. App. PA 8 n.11.

5

II.[5]

We review the grant of Shapiro's summary judgment motion de novo. Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 100 (3d Cir. 2015). We review the District Court's decision to deny Cornerstone equitable relief under the doctrines of laches and estoppel for abuse of discretion. Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 197 (3d Cir. 2014); In re Bressman, 874 F.3d 142, 149 (3d Cir. 2017) (laches); Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 162 (3d Cir. 2011) (estoppel).

III.

Cornerstone urges this Court to reverse the District Court for having committed three errors. First, it argues the District Court erred in concluding that its claims required proof of a deviation from a professional standard of care and, thus, was subject to the AOM requirement. Second, Cornerstone contends the District Court erred when it decided the common knowledge exception did not excuse Cornerstone's noncompliance with the AOM requirement. Third, Cornerstone contends the District Court abused its discretion in denying Cornerstone equitable relief under laches or estoppel based on Shapiro's eleven-month delay in filing its summary judgment motion. We disagree.

A.

The District Court correctly articulated and applied the New Jersey Supreme Court's framework established in Couri v. Gardner to determine that Cornerstone's

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

6

claims required proof of a deviation from the professional standard of care applicable to New Jersey certified public accountants. 801 A.2d 1134 (N.J. 2002). Accordingly, Cornerstone was required to submit an AOM. In support of its conclusion, the District Court cited our decision in the factually analogous case <u>Nuveen Mun. Trust v. Withumsmith Brown P.C.</u> and noted at least three examples of how the success of Cornerstone's claims necessarily required such proof. 752 F.3d 600 (3d Cir. 2014).

First, the District Court explained that for Cornerstone to succeed on its claim that Shapiro improperly accounted for "intercompany business operations" expenses, resulting in an overstatement of revenue and understatement of expenses, a fact finder would first need to "understand[] . . . how accountants <u>should</u> treat" those expenses. App. PA 7 (emphasis added).

Second, the District Court explained that for Cornerstone to succeed on its claim that Shapiro withheld material information from it—the so-called "real" financial books—"a fact finder must first understand what documents a professional accountant would provide to a non-client engaged in an asset purchase." App. PA 7.

Third, the District Court explained that for Cornerstone to succeed on its claim that Shapiro engaged in "gross accounting errors" by preparing an inaccurate and false "AR roll forward report," a fact finder would first need to "understand what standards accounting professionals adhere to in preparing those reports." App. PA 7.

We agree with the District Court's explanation of the ways in which Cornerstone's claims require proof of Shapiro's deviation from a standard of professional care. We also note that the District Court's citations to the varied allegations in Cornerstone's

7

complaint are illustrative rather than exhaustive of the ways in which Cornerstone's claims turn on proof of Shapiro's deviation from the standard of care. See generally App. PA 19–34. That the District Court rightly concluded that Cornerstone's claims require such proof is further supported by the similarity between the claims presented in this case and the claims presented in Nuveen, which we likewise concluded, upon application of the Couri framework, required proof of a deviation from a professional standard of care. 752 F.3d at 606.

## B.

We also agree with the District Court's conclusion that Cornerstone's failure to submit an AOM is not otherwise excusable under the "common knowledge exception" because the matters at issue in this case are beyond the ken of the average juror. The average juror's ordinary understanding and experience would be inadequate to evaluate the propriety of Shapiro's conduct, which implicates business and accounting concepts as varied as the relationship between a parent company and its subsidiaries, the accounting obligations and practices of "publicly-traded" foreign "société anonyme[s]," the proper calculation of EBITDAs, the proper preparation of AR roll forward reports, and the proper treatment of intercompany business operations, among many others. App. PA. 022–023, 026–027. Thus, we agree with the District Court. The common knowledge exception does not apply.

## C.

Finally, we discern no abuse of discretion in the District Court's decision not to apply laches or estoppel to bar Shapiro from moving for summary judgment on AOM grounds. Therefore, we reject Cornerstone's final claim of error.

The District Court was best positioned to consider any claim of prejudice and concluded that Cornerstone did not carry its burden of showing it. Indeed, the District Court noted that Cornerstone, far from having shown any prejudice, had itself acknowledged that it was obligated to submit an AOM, "at the very least as to the count for professional negligence, and willingly chose not to do so." App. PA 8. And the District Court noted that "in the eleven-month period between [the consent order] deadline and the date Defendants filed the [summary judgment] motion, only limited paper discovery ha[d] been exchanged and no depositions h[ad] been taken." App. PA 8. Thus, we agree with the District Court that neither laches nor estoppel precluded dismissal of Cornerstone's case.

## IV.

For these reasons, we will affirm the District Court's order.

9