# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-1119-LWW |
| | ) | |
| GLENHILL ADVISORS LLC, | ) | |
| GLENHILL CAPITAL LP, | ) | |
| GLENHILL CAPITAL | ) | |
| MANAGEMENT LLC, GLENHILL | ) | |
| CONCENTRATED LONG | ) | |
| MASTER FUND LLC, GLENHILL | ) | |
| SPECIAL OPPORTUNITIES | ) | |
| MASTER FUND LLC, JOHN | ) | |
| EDELMAN, GLENN KREVLIN, | ) | |
| JOHN McPHEE, WILLIAM | ) | |
| SWEEDLER, WINDSONG DB | ) | |
| DWR II, LLC, WINDSONG DWR | ) | |
| LLC, WINDSONG BRANDS, LLC, | ) | |
| HERMAN MILLER, INC., and HM | ) | |
| CATALYST, INC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DESIGN WITHIN REACH, INC. | ) | |
| | ) | |
| Nominal defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: October 10, 2022
Date Decided: January 27, 2023

David L. Finger, FINGER & SLANINA, LLC, Wilmington, Delaware; *Attorney for Plaintiff Andrew Franklin*

F. Troupe Mickler IV & Marie M. Degnan, ASHBY & GEDDES, P.A., Wilmington, Delaware; John B. Horgan & Joanna R. Cohen, ELLENOFF GROSSMAN & SCHOLE LLP, New York, New York; *Attorneys for Defendants Glenhill Advisors LLC, Glenhill Capital LP, Glenhill Capital Management LLC, Glenhill Concentrated Long Master Fund LLC, Glenhill Special Opportunities Master Fund LLC, Glenn Krevlin, John Edelman & John McPhee*

John D. Hendershot, Andrew L. Milam & Melissa A. Lagoumis, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Bryan B. House, FOLEY & LARDNER LLP, Milwaukee, Wisconsin; *Attorneys for Defendants Herman Miller, Inc. & HM Catalyst, Inc.*

Scott J. Leonhardt & Jason A. Gibson, THE ROSNER LAW GROUP LLC, Wilmington, Delaware; S. Preston Ricardo, GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP, New York, New York; *Attorneys for Defendants William Sweedler, Windsong DB DWR II, LLC, Windsong DWR LLC & Windsong Brands, LLC*

**WILL, Vice Chancellor**

This action is the fourth attempt by plaintiff Andrew Franklin, a former stockholder of Design Within Reach, Inc., to relitigate issues he lost after trial. Franklin originally challenged the defendants' treatment of certain Design Within Reach employee option shares in connection with a 2014 merger. After a 2017 trial, the Court of Chancery found no wrongdoing regarding the options' treatment and entered a judgment for the defendants. The Delaware Supreme Court affirmed that decision in 2019.

Franklin did not stop there. He filed a lawsuit in New York state court raising—again—allegations about the treatment of the options. The New York court dismissed Franklin's claims because they were more appropriately brought in Delaware.

Now, Franklin has filed an action in this court seeking to revisit the post-trial judgment under Court of Chancery Rule 60(b). There are numerous deficiencies in Franklin's application.

To start, Franklin waited more than two years to bring this action. If he believed that there were grounds to vacate the judgment, he should have promptly raised them in Delaware. But he opted to try for a different result in New York.

On the merits, Franklin provides no meaningful basis to reopen the judgment under Rule 60(b). He lacks new evidence, points to no jurisdictional defects, and

1

presents no extraordinary circumstances. He fails to assert fraud directed at him—much less fraud on the court.

Franklin's complaint is therefore dismissed. Although I decline to sanction him, this decision serves to warn Franklin that he must respect the finality of the post-trial judgment. His protracted litigation quest ends here.

## I. FACTUAL BACKGROUND

The background of this action is described in a memorandum opinion issued by the Court of Chancery on August 17, 2018 (the "2018 Decision").[1] This decision recites only the facts necessary to resolve the defendants' motions to dismiss and for sanctions. Unless otherwise noted, the following facts are drawn from the 2018 Decision, the pleadings, and documents subject to judicial notice.[2]

### A. The Acquisition

On July 28, 2014, Herman Miller, Inc. acquired Design Within Reach, Inc. (the "Company") pursuant to a Stock Purchase Agreement.[3] Herman Miller

---

[1] *Almond ex rel. Almond Fam. 2001 Tr. v. Glenhill Advisors LLC*, 2018 WL 3954733 (Del. Ch. Aug. 17, 2018) ("2018 Mem. Op."), *aff'd*, 224 A.3d 200 (Del. 2019) (TABLE).

[2] *See Lima Delta Co. v. Glob. Aerospace, Inc.*, 2017 WL 4461423, at *4 (Del. Super. Oct. 5, 2017) (explaining that dockets, pleadings, and transcripts from a foreign action are subject to judicial notice); *infra* notes 45-50 and accompanying text (explaining the relevant standard).

Citations in the form of "Defs.' Opening Br. Ex. __" refer to exhibits to the Transmittal Affidavit of Andrew L. Milam, Esq. in Support of the Opening Brief in Support of Defendants' Motion to Dismiss the Verified Amended Complaint. Dkt. 25.

[3] 2018 Mem. Op. at *12.

purchased approximately 83% of the Company's total equity for $155 million in cash, or $23.9311 per share.[4]

During due diligence, the Company's counsel discovered that a greater number of options had been granted to certain employees than was authorized under a 2009 Equity Incentive Award Plan (the "Unauthorized Options").[5] The Company resolved the problem by treating the Unauthorized Options as cash bonuses, such that the employees received the cash equivalent of what they were entitled to if they exercised their Unauthorized Options upon a change of control (the "Change of Control Bonuses").[6] By letter agreements dated July 21, 2014, the Company agreed to pay Change of Control Bonuses totaling $3,858,508 in lieu of granting the Unauthorized Options.[7]

The Stock Purchase Agreement explained this approach.[8] The disclosure schedule attached to the Stock Purchase Agreement stated that the Company's capital structure consisted of 7,121,485 fully diluted shares, including 6,624,470 common shares, 296,252 options, and 200,763 Unauthorized Options.[9]

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] Defs.' Opening Br. Ex. 3 ("SPA") § 1.5(e).

[9] Verified Am. Compl. (Dkt. 20) Ex. H ("SPA Disclosure Sched.") at 4-5; *see* SPA § 11.1 (definition of "Fully-Diluted Shares").

### B.     The Almond Litigation

On December 19, 2014, Andrew Franklin and another former Company stockholder filed an action in this court captioned *Almond ex rel. Almond Family 2001 Trust v. Glenhill Advisors LLC* (the "Almond Litigation").[10] The plaintiffs challenged whether the Unauthorized Options were "validly issued."[11] They alleged that the treatment of the Unauthorized Options deprived stockholders of "their fair share of the [merger] proceeds" because the Unauthorized Options were improperly included in the fully diluted share count.[12] The plaintiffs asked the court to revise the share count and award them a larger portion of the merger consideration.

The Almond Litigation ensued for several years and culminated in a five-day trial in November 2017. The trial record included 500 exhibits, nine depositions, and live testimony from eight fact witnesses and two expert witnesses.[13]

---

[10] C.A. No. 10477-CB. The defendants in this action are the same as those in the Almond Litigation, except that Herman Miller, Inc. and HM Catalyst, Inc. have been added here. *See* 2018 Mem. Op. at *1-3.

[11] Defs.' Opening Br. Ex. 6 ("Almond Fourth Am. Compl.") ¶ 101.

[12] Almond Fourth Am. Compl. ¶ 193; *see also* Defs.' Opening Br. Ex. 7 ("Almond Pls.' Pre-trial Br.") at 5-6, 30, 58-59; Defs.' Opening Br. Ex. 12 ("Almond Pls.' Opening Post-trial Br.") at 72-73, Exs. A-D.

[13] 2018 Mem. Op. at *2.

Chancellor Bouchard subsequently issued the 81-page 2018 Decision. He concluded that the plaintiffs' breach of fiduciary duty claim regarding the Unauthorized Options failed for two reasons.[14] First, the court held that:

> the contractual obligation to pay the option holders plainly belonged to the Company as the counterparty to the stock option agreements with its employees. That obligation was not owed by the Director Defendants or any subgroup of stockholders, and plaintiffs have offered no logical reason why the Company's directors would be under a fiduciary obligation to treat the options as anything other than a liability of the Company.[15]

Second, the court held that:

> plaintiffs ha[d] not established any harm resulting from the Company paying the Change of Control Bonuses. As plaintiffs concede, the Company selected a zero-sum solution where the option holders received exactly the same value they would have received had the options been valid. Thus, the Change of Control Bonuses did not reduce the Merger consideration the plaintiffs received. If anything, the solution was beneficial to the Company (and all of its stockholders) because it eliminated—for no cost—the risk of employees seeking to impede the closing of the Merger to enforce their contractual rights.[16]

The court also rejected the plaintiffs' request for damages arising from inadequate disclosure of the Change of Control Bonuses.[17]

_____

[14] *Id.* at *30.

[15] *Id.*

[16] *Id.*

[17] *Id.* at *31 (finding that the plaintiffs "ha[d] not identified any evidence of disloyalty or bad faith precipitating the contents of the Merger Notice" nor "adduced any evidence of

After denying the plaintiffs' motion for attorneys' fees, the court entered an Amended Final Order and Judgment (the "Judgment") on April 18, 2019.[18]

The plaintiffs appealed the Judgment to the Delaware Supreme Court, which summarily affirmed Chancellor Bouchard's decision on November 18, 2019.[19] The plaintiffs' subsequent motion for a rehearing *en banc* was denied on January 6, 2020.[20]

## C.    The New York Litigation

On July 24, 2020, Franklin filed an action pro se in the Supreme Court of the State of New York (the "New York Litigation") against all of the Almond Litigation defendants plus others.[21] He alleged that "the [defendants] simply falsified and

---

damages proximately caused by the alleged misstatements or omissions in the Merger Notice").

[18] *Almond ex rel. Almond Fam. 2001 Tr. v. Glenhill Advisors LLC*, 2019 WL 1744670 (Del. Ch. Apr. 18, 2019).

[19] *Almond ex rel. Almond Fam. 2001 Tr. v. Glenhill Advisors, LLC*, 224 A.3d 200 (Del. 2019) (TABLE).

[20] *See Almond ex rel. Almond Fam. 2001 Tr. v. Glenhill Advisors, LLC*, C.A. No. 216, 2019C (Del. Jan. 6, 2020).

[21] The defendants in this action are the same as those named in the New York Litigation, except for certain parties who were defendants in the New York Litigation but are not defendants here: Brian Walker; Hezron Timothy Lopez; Gregory Bylsma; David Lutz; Mary Vermeer Andringa; David Brandon; Douglas French; The Estate Of J. Barry Griswell, Sr.; John R. Hoke III; Lisa Kro; Heidi Manheimer; Dorothy Terrell; David Ulrich; Michael Volkema; Seth Shapiro; Lorraine Disanto; Foley & Lardner LLP; Kevin Makowski; Carl Kugler; Ellenoff Grossman & Schole LLP; Douglas Ellenoff; Richard Baumann; Matthew Gray; Joshua England; Financo LLC; and Lee Helman. Defs.' Opening Br. Ex. 17 ("N.Y. Compl.") ¶¶ 17-64.

6

padded the Transaction share count to reflect [the Unauthorized Options] that never existed."[22] He advanced claims for equitable accounting, fraud, and breach of fiduciary duty.[23] Franklin asserted that the defendants in the Almond Litigation had perpetrated a "fraud" on him and the Court of Chancery.[24]

The defendants in the New York Litigation moved to dismiss Franklin's complaint (and a subsequent amended complaint) on the grounds of res judicata and collateral estoppel. On March 19, 2021, the New York court dismissed Franklin's complaint, holding that:

> As this Court held on the record on March 19, 2021, Delaware is the juridical center of the dispute relating to the Merger that was extensively litigated by the parties for a period of years. While it certainly appears that the issues raised by Mr. Franklin in the Amended Complaint filed here are barred by res judicata or collateral estoppel, to the extent Mr. Franklin claims that the Delaware courts misunderstood or overlooked evidence or that post-trial events suggest that a fraud was perpetrated on the Chancery Court of the State of Delaware, this Court finds that those issues, as well as any other issues raised in this litigation, are more appropriately raised in the Delaware courts.[25]

---

[22] *Id.* ¶ 6.

[23] *Id.* ¶¶ 211-300.

[24] *Id.* ¶¶ 233-46.

[25] Defs.' Opening Br. Ex. 18 at 2-3.

**D.    This Action**

On December 30, 2021—more than nine months after the New York Litigation was dismissed—Franklin filed the present action in this court.[26]

On February 17, 2022, the defendants filed a motion to dismiss.[27]  Defendant Windsong Brands, LLC also filed a supplemental brief in support of the defendants' motion to dismiss.[28]

On March 22, Franklin filed an Amended Complaint that advances two counts.[29]  Count I is a claim for common law and equitable fraud.[30]  Franklin alleges that during the Almond Litigation, the defendants fraudulently misrepresented the fully diluted share count to be 7,121,485.[31]  Consequently, Franklin contends that he "was denied a full and fair opportunity to present his case."[32]  Count II is a claim asserting that the defendants "engaged in a fraud on the Court by submitting an incorrect fully diluted share count."[33]

---

[26] Verified Compl. (Dkt. 1) ("Compl.").

[27] Dkt. 12.

[28] Dkt. 15.

[29] Verified Am. Compl. (Dkt. 20) ("Am. Compl.").

[30] *Id.* ¶¶ 111-21.

[31] *Id.*

[32] *Id.* ¶ 121.

[33] *Id.* ¶ 130.

On April 26, the defendants moved to dismiss the Amended Complaint.[34] Briefing on the motion to dismiss was completed on June 21.[35] On August 24, the defendants moved for sanctions.[36] Briefing on the motion for sanctions was completed on September 29.[37] I heard oral argument on both motions on October 10.[38]

## II.    LEGAL ANALYSIS

The present action is brought pursuant to Court of Chancery Rule 60(b) to seek relief from the Judgment in the Almond Litigation.[39] Rule 60(b) provides that:

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated,

---

[34] Dkt. 23.

[35] Dkt. 31.

[36] Dkt. 35.

[37] Dkt. 42.

[38] Dkts. 46, 49.

[39] *See* 11 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2865, Westlaw (database updated Apr. 2022) (discussing, in the context of Federal Rule of Civil Procedure 60 that "the court is to act 'on motion' and this is the usual procedure[; h]owever the court has power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion") [hereinafter "Wright & Miller"].

9

or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a Court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant any relief provided by statute, or to set aside a judgment for fraud upon the Court. The procedure for obtaining relief from judgments shall be by motion as prescribed in these Rules or by an independent action.[40]

Although the subsections of Rule 60(b) that Franklin invokes are ever-changing, he seems to rely on subsections (2), (3), (4), and (6).[41]

Franklin also argues that the defendants have committed a fraud on the court. That style of claim draws textual support from the penultimate sentence of Rule 60(b).[42] "A Rule 60(b)(3) motion is reserved for situations where a party has engaged in fraud or misrepresentation that prevents the moving party from fairly and adequately presenting his or her case."[43] "Fraud on the court," by contrast, "is a

---

[40] Ct. Ch. R. 60(b).

[41] *See infra* notes 68-72 and accompanying text (describing the specific Rule 60(b) arguments raised by Franklin).

[42] That sentence reads: "[t]his Rule does not limit the power of a Court to entertain an independent action to relieve a party from a judgment, order or proceeding . . . to set aside a judgment for fraud upon the Court." Ct. Ch. R. 60(b). *See MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625, 639 (Del. 2001); *see also In re Bressman*, 874 F.3d 142, 149 (3d Cir. 2017) ("[A]n independent action alleging fraud upon the court is completely distinct from a motion under Rule 60(b)."); *Johnson v. Preferred Pro. Ins. Co.*, 91 A.3d 994, 1005 (Del. Super. 2014); Wright & Miller § 2870.

[43] *MCA*, 785 A.2d at 639.

10

different, more serious, species, generally limited to fraudulent conduct that

seriously 'affects the integrity of the normal process of adjudication.'"[44]

The defendants' motion is brought pursuant to Court of Chancery Rule

12(b)(6).[45] That motion is, however, effectively an opposition to Franklin's

application for relief under Rule 60(b).[46]

In this procedural posture, I take the facts as pleaded by Franklin as true.[47] I

"defer only to those facts [Franklin] alleged in [his] pleading and the reasonable

inferences therefrom."[48] The "complaint and facts alleged [must be] sufficient to

support a claim upon which relief may be granted."[49] Still, "[b]ecause of the

---

[44] *Johnson*, 91 A.3d at 1005 (citing 6 James Wm. Moore et al., Moore's Federal Practice § 60.21[4] (3d ed. 1997)).

[45] Dkt. 12.

[46] *See Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 247 A.3d 229, 234 (Del. 2021) (discussing similar circumstances where a complaint raised Rule 60(b) arguments and the defendant's Rule 12(b)(6) motion was therefore "its opposition to the Rule 60(b) arguments raised by" the plaintiff).

[47] *See id.*

[48] *Id.*

[49] *Johnson*, 91 A.3d at 1004 (considering a motion to dismiss a complaint asserting Rule 60(b) claims); *accord Madonna v. United States*, 878 F.2d 62, 64-65 (2d Cir. 1989) ("Normally, an action for fraud on the court under Rule 60(b) must be established by clear and convincing evidence. However, for the purpose of refuting a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the nonmoving party need not meet this high burden of proof at the threshold; it is enough to allege facts which, when assumed to be true, would amount to fraud on the court." (citation omitted)).

significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[50]

I begin by considering whether Franklin unreasonably delayed in bringing his claims. Despite concluding that he has, I address the merits of his contentions and find them lacking. Finally, I discuss the defendants' request for sanctions.

## A. Franklin's Unreasonable Delay

As an initial matter, the defendants argue that this action was not timely filed. "Although Court of Chancery Rule 60(b) does not include the time deadlines included in its Federal Rules of Civil Procedure counterpart, a party moving to reopen pursuant to Chancery Court Rule 60(b) must 'act without unreasonable delay . . . in making his motion.'"[51] Franklin waited more than two years from the

---

[50] *MCA*, 785 A.2d at 635.

[51] *In re U.S. Robotics Corp. S'holders Litig.*, 1999 WL 160154, at *8 (Del. Ch. Mar. 15, 1999) (quoting *Schremp v. Marvel*, 405 A.2d 119, 120 (Del. 1979)); *cf.* Fed. R. Civ. P. 60(c)(1) (requiring a motion under Rule 60(b)(1)-(3) to be made within one year of the entry of the judgment).

As to Franklin's fraud on the court claim, "an undue delay in bringing an independent action for relief may defeat the action, just as a 60(b) motion could be time barred." *Johnson*, 91 A.3d at 1005. Franklin appears to suggest that undue delay cannot bar a claim for fraud on the court. There is some support for that notion in federal jurisprudence. *See, e.g.*, Wright & Miller § 2870 ("[L]aches [cannot] bar consideration of the matter." (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Toscano v. C. I. R.*, 441 F.2d 930, 936-37 (9th Cir. 1971))). In any event, Franklin has failed to present a viable claim for fraud on the court. *See infra* notes 98-102 and accompanying text.

12

Delaware Supreme Court's rejection of his appeal in the Almond Litigation to bring this suit.[52] That delay was unreasonable.[53]

The gravamen of Franklin's Amended Complaint is that shares associated with the Unauthorized Options should have been excluded from the fully diluted share count for the merger.[54] He has been making this same assertion for years. He challenged the treatment of the Unauthorized Options in his August 14, 2017 fourth amended complaint in the Almond Litigation.[55] He continued to press the argument in his pre-trial brief, in the pre-trial stipulation, at the November 2017 trial, in his post-trial briefs, and on appeal.[56] The only change now is that Franklin has shifted

---

[52] The Delaware Supreme Court summarily affirmed the 2018 Decision on November 18, 2019. Franklin filed this action on December 30, 2021. *See supra* notes 19-20 & 26 and accompanying text.

[53] *See Schremp*, 405 A.2d at 119-21 (holding that delay—as measured by the time between the final judgment and the Rule 60(b) action—of nine months was unreasonable and that a two-month delay—as measured by the time between learning about the final judgment and the Rule 60(b) action—was unreasonable.); *In re U.S. Robotics*, 1999 WL 160154, at *2, *9 (finding 13-month delay—as measured by the time between the final judgment and the Rule 60(b) action—to be unreasonable).

[54] *See* Am. Compl. ¶¶ 111-31.

[55] Almond Fourth Am. Compl. ¶¶ 100-12, 184-20.

[56] Almond Pls.' Pre-trial Br. 5-6, 30, 58-59; Defs.' Opening Br. Ex. 8 ("Almond Pre-trial Stipulation") at 32-34; Defs.' Opening Br. Ex. 10 at 416-19, 428-29; Defs.' Opening Br. Ex. 11 at 804-08; Almond Pls.' Opening Post-trial Br. 72-73; Defs.' Opening Br. Ex. 13 ("Almond Pls.' Post-trial Reply Br.") at 46-51; Defs.' Opening Br. Ex. 14 ("Almond Post-trial Oral Arg. Tr.") at 189-90; Defs.' Opening Br. Ex. 1 ("Almond Pls.' Opening Appeal Br.") at 9-10, 21-22, 40-41; Defs.' Opening Br. Ex. 16 at 19-20.

from calling the Unauthorized Options "invalid" to describing them as "cancelled."[57] That distinction—regardless of its merit—is no basis to excuse his delay.

If Franklin believed that the defendants lied about the status of the Unauthorized Options during the Almond Litigation, he should have promptly alerted this court. Instead, he brought the New York Litigation, asserting that he (and the Court of Chancery) had been "duped."[58] His detour to New York seems to have been a tactical attempt at a do-over. The Judgment held that Franklin was owed nothing. But in the New York Litigation, Franklin asked the court to "void" millions of shares of Company stock and to award him $67 million plus "rescissory damages."[59]

Franklin has many explanations for why he waited to seek relief from this court. Although I am sympathetic to his personal plights, his delay is inexcusable.[60]

Franklin contends, for example, that he sued in a "local" New York court because the COVID-19 pandemic left him unable to litigate in Delaware.[61] This

---

[57] *See* Answering Br. of Pl. Andrew Franklin in Opp'n to Defs.' Mot. to Dismiss the Verified Am. Compl. (Dkt. 27) ("Pl.'s Answering Br.") at 2-3.

[58] *See* Am. Compl. ¶¶ 66-92; N.Y. Compl. ¶¶ 176, 190-94, 243.

[59] N.Y. Compl. at p. 64.

[60] For example, Franklin describes family members' illnesses and financial struggles. Pl.'s Answering Br. 24-26. I do not take such hardships lightly. Because Franklin was able to file suit in New York, however, I am not persuaded that he was unable to act sooner here.

[61] *Id.* at 26-27.

court, however, remained open and accessible. Litigants continued to make filings electronically and to appear virtually throughout the pandemic.

Franklin also avers that he opted to file suit in New York because he was unable (for a time) to retain counsel or secure litigation financing.[62] But this argument does not explain why he sought to vacate the Judgment in New York or why he waited seven months to do so. Moreover, Franklin could have acted pro se in Delaware—as he did in the New York Litigation.

Franklin further argues that "new evidence" obtained in the New York Litigation in late 2020 prompted this action.[63] This "new evidence" does not meet the Rule 60(b)(2) standard.[64] Even if it did, Franklin waited more than a year to bring it to this court's attention.

The Court of Chancery's decision in *In re United States Robotics Corp.* is instructive.[65] There, the movants sought to reopen a class action challenging a merger 13 months after the Delaware court entered a final judgment. In the interim, the movants pursued federal securities claims in California relating to the same

---

[62] *Id.* at 29; Am. Compl. ¶¶ 106-110.

[63] Pl.'s Answering Br. 30; Oral Arg. Tr. (Dkt. 49) at 45 ("[W]e respectfully submit that the clock starts, so to speak, when they receive[d] the admissions . . . [in] September of 2020 [when Franklin received the notice to admit]."); *see* Am. Compl. Ex. A ("N.Y. Notice to Admit") (indicating the notice to admit was dated September 21, 2020); *infra* notes 75-80 and accompanying text (discussing the notice to admit).

[64] *See infra* Section II.B.1 (rejecting Franklin's argument that he obtained "new evidence").

[65] 1999 WL 160154 (Del. Ch. Mar. 15, 1999).

merger. Their ill-timed Rule 60(b) motion was denied by then-Vice Chancellor Strine, who explained that if "the movants wished to reopen the Final Judgment, the procedural path forward was not a difficult one to discern. Rather than filing the California [a]ctions, a prompt motion under Rule 60(b) should have been presented to this court."[66] The court found it "shocking" that "it took more than a year for the Rule 60(b) motion to be filed," and noted that "[t]o sanction untimely action of this sort would set a negative precedent and contribute to a lack of professional diligence by lawyers."[67]

So too here. In 2014, Franklin chose to bring his claims in Delaware. The court ruled against Franklin after trial and the Delaware Supreme Court affirmed. To the extent that Franklin sought to vacate the Judgment, he needed to promptly bring a Rule 60(b) application in this court. Yet he waited seven months before strategically pursuing a collateral attack in New York. If that were not enough, he waited another nine months after the New York Litigation was dismissed to bring this action. His torpor is undeniable, and his application is untimely.

---

[66] *Id.* at *9.

[67] *Id.* at *9-10; *see also In re MCA, Inc.*, 774 A.2d 272, 278 (Del. Ch. 2000) (rejecting a belated Rule 60(b) motion where the movant "could have moved to vacate" promptly in Delaware but chose "for purely strategic reasons, to pursue a collateral attack in federal court"), *aff'd sub nom. MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625 (Del. 2001).

### B. Franklin's Failure to Satisfy Rule 60(b) or Plead Fraud on the Court

Franklin's unreasonable delay is sufficient grounds to dismiss this action. Given the long history of this case and his refusal to accept prior decisions of this court, I will briefly address the merits of his claims. In short, none are viable.

Franklin has invoked various subsections of Rule 60(b) at different points in this matter. In his initial Complaint, Franklin sought relief "pursuant to Chancery Court Rule 60(b)(2)(3) [sic]" and indicated that "the Court may elect to treat this complaint as a motion under [Rule 60(b)] subsections (4) and (6)."[68] When he amended his pleading, he deleted the reference to "Rule 60(b)(2)(3) [sic]" but kept the reference to Rule 60(b)(4) and 60(b)(6).[69] Franklin's brief in opposition to the defendants' motion to dismiss the Amended Complaint, however, relies exclusively on Rule 60(b)(2) and 60(b)(3).[70] He makes no argument about Rule 60(b)(4), thereby waiving it.[71] And he expressly disclaims any request for relief under Rule

---

[68] Compl. at 2.

[69] Am. Compl. at 2.

[70] Pl.'s Answering Br. 31-36.

[71] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."). A claim under Rule 60(b)(4) would fail in any event. That provision provides that the court may set aside a "void" judgment. Ct. Ch. R. 60(b)(4). It applies "'only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.' Thus, the courts have declined to find an unconstitutional risk of bias except in a few extreme circumstances." *Meso Scale*, 247 A.3d at 255 (quoting *U.S. Aid Funds, Inc.*

60(b)(6) because it "would be duplicative of the Rule 60(b)(3) claim."[72]  I take him at his word.

Thus, I begin by addressing whether Franklin has presented newly discovered evidence that could support vacating the Judgment under Rule 60(b)(2).  I go on to consider whether he is entitled to relief under Rule 60(b)(3) or due to fraud on the court.  I conclude that each of Franklin's arguments fails.

### 1.    Newly Discovered Evidence

Franklin asserts that he discovered new evidence during the New York Litigation.  To obtain relief under Rule 60(b)(2), Franklin has the burden to show:

> (1) newly discovered evidence has come to [his] knowledge since the trial; (2) [he] could not, in the exercise of reasonable diligence, have been discovered for use at the trial; (3) it is so material and relevant that it probably will change the result if a new trial is granted; (4) it is not merely cumulative or impeaching in character; and (5) it is reasonably possible that the evidence will be produced at the trial.  The court also may examine

---

*v. Espinosa*, 559 U.S. 260, 271 (2010)).  Franklin points to no jurisdiction defect or denial of due process in the Almond Litigation.

[72] Pl.'s Answering Br. 34 n.5 ("Franklin does not seek relief under Rule 60(b)(6) as it would be duplicative of the Rule 60(b)(3) claim, both arising from the same facts.").  "Rule 60(b)(6) is the residual catchall, applying to 'any other reason justifying relief from the operation of the judgment.'"  *Meso Scale*, 247 A.3d at 252 (quoting Ct. Ch. R. 60(b)(6)).  Relief under this provision requires a showing of an "extraordinary situation or circumstances."  *Id.* at 252 (quoting *Jewell v. Div. of Soc. Servs.*, 401 A.2d 88, 90 (Del. 1979)).  Franklin has failed to carry his burden under other subsections of Rule 60(b).  He therefore cannot obtain relief under Rule 60(b)(6).  *See Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2018 WL 1254958, at *3 (Del. Ch. Mar. 12, 2018) ("Because the [plaintiff has] failed to carry [his] burden under [the other subsections of Rule 60(b)], [he] cannot obtain relief under Rule 60(b)(6).").

18

additional equitable factors, including: (6) whether the moving party has made a timely motion; (7) whether undue prejudice will inure to the nonmoving party; and (8) considerations of judicial economy.[73]

Franklin cannot meet this burden for several reasons.

First, most of the so-called evidence Franklin relies on in his Amended Complaint is not newly discovered but from the Almond Litigation. Franklin cites to numerous trial exhibits, deposition testimony, and trial testimony—all from 2017.[74] The only potentially fresh information he points to concerns certain "Notice to Admit" responses from the New York Litigation.[75]

Franklin focuses on Notice to Admit Number 8, which propounded the following request:

> Admit, between the effective time of the SPA dated July 17, 2014 and upon the effective time of the Merger, it is true that all 200,763 [Unauthorized] Options were cancelled.[76]

---

[73] *Vianix Del. LLC v. Nuance Commc'ns, Inc.*, 2011 WL 487588, at *4 (Del. Ch. Feb. 9, 2011).

[74] *See* Pl.'s Answering Br. 11-16; Am. Compl. Exs. B-N.

[75] Am. Compl. ¶ 95; *see also* N.Y. Notice to Admit. It is not clear to me that these written discovery responses constitute "newly discovered evidence" as a matter of law because they were created in late 2020, long after the Judgment. *See Bachtle v. Bachtle*, 494 A.2d 1253, 1255-56 (Del. 1985) (explaining that newly discovered evidence must "have been 'in existence and hidden at the time of judgment'" (quoting *Ryan v. U.S. Lines Co.*, 2d Cir., 303 F.2d 430, 434 (1962))).

[76] N.Y. Notice to Admit at No. 8.

The defendants provided the following response:

> To the extent Responding Defendants are obligated to respond and subject to the foregoing General Objections, Responding Defendants respond as follows: Deny.[77]

Franklin argues that because the request was denied, "by process of elimination" the defendants necessarily admitted that the Unauthorized Options were "cancelled prior to the execution of the [Stock Purchase Agreement]."[78] As a result, he contends, the defendants inflated the fully diluted share count by including the shares associated with the Unauthorized Options.

I disagree. The request for admission is incomprehensible on its face.[79] It could be read to seek an admission that (i) the Unauthorized Options were canceled between two specific times, (ii) the Unauthorized Options were canceled upon the effective time of the merger, or (iii) both. It does not define the term "cancelled" on which Franklin places so much reliance. By denying the request, the defendants did not concede that the Unauthorized Options were "cancelled"—whatever that may

---

[77] *Id.*

[78] Pl.'s Answering Br. 35.

[79] Franklin points out that the defendants failed to object to the ambiguity of the notice to admit. Oral Arg. Tr. 44. The defendants' lack of explicit objection on that basis, however, does not support the inference Franklin seeks.

20

mean in reference to options that were not validly issued in the first place—before the Stock Purchase Agreement was executed.[80]

Second, Franklin has not shown that this information "could not, in the exercise of reasonable diligence, have been discovered for use at the [Almond Litigation] trial."[81] During the Almond Litigation, Franklin repeatedly argued that the "cancelled" shares associated with the Unauthorized Options should not have been included in the fully diluted share count.[82] He had ample opportunity during the years that litigation proceeded to explore whether and when the Unauthorized Options were supposedly canceled.[83]

Third, Franklin's view of the evidence is contradicted by the record presented in the Almond Litigation. The Stock Purchase Agreement explained that the Unauthorized Options "will be treated [for the purpose of calculating the number of fully diluted shares] . . . as if such [employee] held such promised [Unauthorized] Options as of the Closing."[84] The disclosure schedule to the Stock Purchase Agreement stated that "the Company granted [Unauthorized] Options for an

---

[80] *See* Am. Compl. ¶ 95(e) ("[T]he [Unauthorized] Options were cancelled <u>before</u> HMI and Sellers effected the SPA on July 17, 2014.") (emphasis in original).

[81] *Vianix*, 2011 WL 487588, at *4.

[82] *See supra* note 56.

[83] *See Riker v. Teucrium Trading, LLC*, 2021 WL 1779317, at *3 (Del. Ch. May 3, 2021).

[84] SPA § 1.5(e).

21

aggregate 200,763 Option Shares in excess of the number of shares of Option Shares authorized under the [2009 Equity Incentive Award]" and that the Company would "enter into Change of Control Letters with holders of such [U]nauthorized Options."[85] The change of control letters, issued four days after the execution of the Stock Purchase Agreement, confirmed that the Unauthorized Options "were not validly issued" and offered employees the Change of Control Bonus.[86] The letters also provided that the agreements granting the Unauthorized Options were "[t]hereby amended" to remove the Unauthorized Options and to grant each employee a lesser number of options.[87] Together, these documents suggest that the Unauthorized Options ceased to exist after the closing of the Stock Purchase Agreement—not before, as Franklin contends.[88]

Finally, the purported cancellation of the Unauthorized Options would not affect the outcome of the Almond Litigation.[89] The 2018 Decision held that the director defendants did not breach their fiduciary duties because the "contractual

---

[85] SPA Disclosure Sched. at 4.

[86] Defs.' Opening Br. Ex. 9.

[87] *Id.*

[88] *See* Almond Pre-trial Stipulation Ex. A at 37-38 (listing as trial exhibits PX 13 (change of control letters), PX 210 (disclosure schedule to the Stock Purchase Agreement), and PX 212 (Stock Purchase Agreement)).

[89] *See Vianix*, 2011 WL 487588, at *4 (explaining that newly discovered evidence must be "so material and relevant that it probably will change the result if a new trial is granted").

obligation to pay the [Unauthorized Option] holders plainly belonged to the *Company.*"[90] The fact that the Unauthorized Options were invalid (or canceled) could potentially mean that the Company failed to fulfill its side of the bargain with its employees, but not that there was no bargain at all. Moreover, the Change of Control Bonuses were found to be a "zero-sum solution where the option holders received exactly the same value they would have received had the options been valid."[91] Whether the Unauthorized Options are labeled as "cancelled" or "invalid" is of no consequence to the court's post-trial conclusion that no wrongdoing occurred.[92]

### 2. Fraud

Franklin also argues that the Judgment should be set aside pursuant to Rule 60(b)(3) or due to fraud on the court. "[T]he burden of proof of fraud is on the moving party and that fraud must be established by clear and convincing evidence

---

[90] 2018 Mem. Op. at *30 (emphasis in original).

[91] *Id.*

[92] Franklin argues, on one hand, that the distinction between cancellation and invalidity is important because invalid shares may be subject to ratification. On the other hand, according to Franklin, stock or options "no longer in existence prior to the execution of the [Stock Purchase Agreement]" "cannot be ratified or cured back into existence other than by the execution of new agreements for awards of options or shares." Pl.'s Answering Br. 3. He cites no authority for this proposition. Regardless, he had the opportunity to take discovery into the treatment of the Unauthorized Options. He could have presented any theories he wished about ratification or cancellation at trial. He did, in fact, raise a ratification argument in appealing the Almond Litigation, which the Delaware Supreme Court rejected. *See* Almond Pls.' Opening Appeal Br. 40 & n.87.

[and] must have prevented the moving party from fully and fairly presenting his case."[93] The court will exercise its discretion to deny an application under Rule 60(b)(3) "if it is merely an attempt to relitigate the case or if the court otherwise concludes that fraud or misrepresentation has not been established."[94]

Franklin contends that the defendants made misrepresentations about the cancellation of the Unauthorized Options during the Almond Litigation. Even if cancellation mattered (and it does not), Franklin failed to demonstrate that relevant information was hidden from him. Rather, his claim of fraud restates the same argument that was rejected in the Almond Litigation.[95]

Franklin consistently contended in the Almond Litigation that the shares relating to the Unauthorized Options should not have been included in the fully diluted share count.[96] He may disagree with the arguments advanced by the

---

[93] *Wilson v. Montague*, 2011 WL 1661561, at *3 (Del. 2011) (quoting Wright & Miller § 2860).

[94] *Id.*

[95] *See, e.g.*, Almond Pls.' Pre-trial Br. 58-59 (arguing that the defendants "pretend[ed] the [Unauthorized O]ptions had been valid"); Almond Pls.' Post-trial Reply Br. 48 n.34 (same); Almond Post-trial Oral Arg. Tr. 189-90 (arguing that the defendants "pretended that those invalid stock options were, in fact valid and treated them as though they had vested when they had not, because invalid options can't vest").

[96] *See supra* note 56.

defendants or with the court's findings of fact after trial. But that does not mean that the defendants engaged in concealment or fraud.[97]

For the same reason, Franklin cannot show that there has been a fraud on the court. "A party seeking to vacate an order on the ground that his or her opponent effectuated a fraud on the court bears a heavy burden."[98] It can be shown in the rare case involving "a corruption of the judicial process itself."[99] Examples include "bribery of a judge or juror, improper influence exerted on the court by an attorney, or involvement of an attorney as an officer of the court in the perpetration of fraud."[100]

Nothing of the sort is presented here. Franklin alleges that the defendants "submitt[ed] an incorrect fully diluted share count . . . [that] was designed to mislead

---

[97] *See Paron Cap. Mgmt., LLC v. Crombie*, 2012 WL 214777, at *7 (Del. Ch. Jan. 24, 2012) ("[T]he mere fact that the opposing sides to a lawsuit presented conflicting evidence does not show clearly and convincingly that one side must have committed a fraud on the court.").

[98] *MCA*, 785 A.2d at 639.

[99] *Id.*; *see also Postorivo v. AG Paintball Hldgs., Inc.*, 2008 WL 3876199, at *21 (Del. Ch. Aug. 20, 2008) ("Although a precise definition of 'fraud on the Court' is elusive, the courts typically confine the concept to serious cases of misconduct that threaten 'the integrity of the court and its ability to function impartially.'" (quoting *Smith v. Williams*, 2007 WL 2193748, at *4 (Del. Super. July 27, 2007))); *Smith*, 2007 WL 2193748, at *4 ("'[F]raud on the court' is typically confined to the more serious, but fortunately rare, cases involving a corruption of the judicial process itself.").

[100] *Smith*, 2007 WL 2193748, at *5.

the Court."[101]  He had every opportunity to test that evidence at trial.[102]  His discontent with the court's assessment of the evidence is hardly an indication that a fraud was perpetrated.

## C.    The Unsuitability of Monetary Sanctions

The defendants have moved for sanctions under Court of Chancery Rule 11.[103] They seek the full amount of their fees and expenses in this litigation.

Rule 11(b) requires that an attorney presenting a pleading or brief to the court certify:

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.[104]

---

[101] Am. Compl. ¶ 130.

[102] *Smith*, 2007 WL 2193748, at *5 (observing that "perjury and fabricated evidence" are "evils that can be exposed at trial and court rules are fashioned to facilitate such revelations").

[103] Dkt. 35.

[104] Ct. Ch. R. 11(b)(1)-(3).

Compliance with Rule 11 is judged by an objective standard.[105] "Under Rule 11, courts are empowered to impose upon counsel or the represented party an order to pay the other party's expenses incurred as a result of the filing of the action, including a reasonable attorney's fee."[106]

Franklin's conduct is far from commendable. He has repeatedly made frivolous efforts to reopen a valid judgment. After litigating through a five-day trial— and losing—he tried for a different outcome both in the New York court and here. His efforts have unfairly burdened the defendants and courts in two jurisdictions. More fundamentally, Franklin risks flouting the finality of judgments—a crucial underpinning of our judicial system.[107]

---

[105] *Crumplar v. Superior Ct. ex rel. New Castle Cnty.*, 56 A.3d 1000, 1008 (Del. 2012) ("Judges in all Delaware trial courts should determine whether an attorney should be sanctioned under Rule 11 under an objective standard. Delaware demands more from attorneys than pure hearts and empty heads. We therefore [hold that] the attorney's duty is one of reasonableness under the circumstances; an attorney's subjective good-faith belief in the propriety of his actions does not alone satisfy Rule 11.").

[106] *Price Org., Inc. v. Universal Comput. Servs., Inc.*, 1993 WL 400152, at *4 (Del. Ch. Oct. 1, 1993).

[107] *See Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, 1996 WL 757274, at *1 (Del. Ch. Dec. 20, 1996) ("Rule 60(b) implicates two important values: the integrity of the judicial process and the finality of judgments. The rule exists to serve the first; its administration must acknowledge the second."); *In re MCA*, 774 A.2d at 280 ("Sinister suspicions and 'dark imaginings' are not enough [to support a Rule 60(b) claim]. A party must point to evidence or facts that would lead a reasonable mind to the conclusion that an adverse party improperly obtained a final judgment.").

Nevertheless, I decline to award the "extreme remedy" of sanctions under Rule 11.[108] "[S]anctions should be reserved for those instances where the Court is reasonably confident that an attorney does not have an objective good faith belief in the legitimacy of a claim or defense."[109] The court must be confident, after careful consideration, that outrageous and abusive conduct has occurred. Despite Franklin's long-running litigious streak, I cannot confidently conclude that this action was brought in bad faith or with the intention to harass the defendants.

By declining to award the defendants their fees, I am not excusing Franklin's conduct. It is my expectation that this decision will serve to deter Franklin from any future efforts to revisit the Judgment.[110] He is cautioned that continuing to press the same arguments may well subject him to Rule 11 sanctions in the future. Beyond that, the motion for sanctions is denied.

---

[108] *Price Org.*, 1993 WL 400152, at *6.

[109] *Smith v. Donald L. Mattia, Inc.*, 2012 WL 252271, at *5 (Del. Ch. Jan. 13, 2012) (quoting *Xen Invs., LLC v. Xentex Techs., Inc.*, 2003 WL 25575770, at *3 (Del. Ch. Dec. 8, 2003)).

[110] *See Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D.*, 2019 WL 2613193, at *2 (W.D.N.Y. June 25, 2019) (denying a motion to vacate and cautioning a plaintiff "that the continued filing of factually and legally baseless motions for relief from judgment may subject her to sanctions under Rule 11 of the Federal Rules of Civil Procedure").

## III.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted.  This action is dismissed with prejudice.  The defendants' motion for sanctions is denied.